*Debe confirmarse la resolución apelada.*

THE FEDERAL LAND BANK OF BALTIMORE, peticionario y apelante, *v.* LA CORTE MUNICIPAL DE CIALES, P. R., HON. LUIS MARTORELL, JUEZ, recurrido, opositor y apelado.

No. 6585.—*Sometido:* Diciembre 21, 1934. *Resuelto:* Enero 18, 1935.

*Frank Martínez* y *E. Campos del Toro,* abogados del apelante; *V. Polanco de Jesús,* abogado del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Nicolás Padilla Rivera inició una acción contra The Federal Land Bank of Baltimore alegando que tiene constituído su hogar seguro en una finca rústica, compuesta de 21.75 cuerdas, ubicada en el barrio Pesa, de Ciales, que dicho banco remató y se adjudicó en pública subasta, celebrada por el márshal de la Corte de Distrito de Arecibo en un procedimiento de ejecución de hipoteca. Se alega además en la demanda que el banco demandado, al adquirir la finca, amenazó al demandante con desalojarle de la casa y terrenos adyacentes, que constituyen su *homestead.* Solicita el demandante que se condene a The Federal Land Bank of Baltimore a reconocerle el referido derecho de hogar seguro en la indicada finca hasta el valor del mismo, o sea $500, y entregarle

una porción del inmueble o la cantidad en efectivo en que está valorado dicho derecho. La parte demandada compareció ante la Corte Municipal de Ciales solicitando que la causa fuese trasladada a la Corte Municipal de San Juan, por entender que la acción en reclamación del derecho de hogar seguro es una de naturaleza personal y que por tanto el demandado en dicho pleito tiene derecho a que la causa se ventile en el tribunal de su domicilio.

Celebrada la vista de la moción de traslado en la corte municipal, dicho tribunal denegó la solicitud basándose en que la acción en reclamación de *homestead* es una de naturaleza real que debe ventilarse en el distrito donde se ha constituído el hogar seguro. Contra la resolución de la Corte Municipal de Ciales interpuso el banco recurso de *certiorari* para ante la Corte de Distrito de Arecibo. Expedido el auto y celebrada la vista del recurso en el referido tribunal, la corte de distrito resolvió que el derecho de hogar seguro es un derecho real y que una acción en reclamación de dicho derecho debe verse en el distrito en que radica el objeto de la acción de acuerdo con el artículo 75 del Código de Enjuiciamiento Civil. Basándose en este criterio se anuló el auto expedido y se declaró sin lugar el recurso de *certiorari*. De la resolución dictada en este caso interpuso recurso de apelación el banco demandado. Se alega que la corte inferior erró al resolver que las acciones reclamando el derecho de hogar seguro son litigios de bienes inmuebles y deben verse en el lugar donde radica la propiedad a que se refiere el aludido derecho de *homestead* y al negarse a decretar la nulidad de la resolución dictada por la Corte Municipal de Ciales denegando la moción del Federal Land Bank of Baltimore en que se solicitaba el traslado de la causa pendiente ante dicho tribunal municipal para la Corte Municipal de San Juan, sección segunda.

Transcribe el apelante en su alegato un párrafo de Corpus Juris que esta corte reprodujo en *Manescau* v. *Usera*, 46 D. P.R. 143, y hace resaltar entre sus citas el caso de *Young* v.

*Olivares*, 41 Fil. 420, complementándolo con una cita de la Enciclopedia Jurídica Española, tomo 18, página 270. Copiamos a continuación el párrafo de Corpus Juris en que descansa el apelante, con algunas modificaciones en la traducción:

"Las disposiciones sobre hogar seguro no crean un nuevo título ni alteran el título de dominio o equitativo en el terreno. Tampoco fortalecen ni ensanchan el título ya existente. Es el uso de la propiedad y no el título lo que cambia. No crean ningún interés en la propiedad cuando las partes que reclaman el derecho de *homestead* no tienen título o interés en la misma. Tampoco constituyen una defensa en una acción de saneamiento o de carácter reivindicatorio."

Aunque se ha dicho que el interés creado por la institución de *homestead* depende enteramente de la Ley Orgánica o de las disposiciones estatutarias, que no son las mismas en todos los estados, sin embargo creemos que no hay disparidad en cuanto a que el *homestead* creado por estas diversas disposiciones no trasmite propiedad alguna ni dispone del título existente. Puede decirse que nada se trasmite ni nada se recibe en virtud de la creación de este derecho. El padre de familia, dueño del inmueble, continúa poseyendo lo mismo que antes tenía, con la limitación de no poder desprenderse del *homestead* sin el consentimiento de su mujer ni disponer del mismo por testamento.

Waples, en su obra sobre "Homestead and Exemption", página 102, se expresa así:

"El estado no concede derechos de propiedad de *homestead* a nadie. No dispone del título del dueño. Protege lo que ya posee, bajo condiciones y con limitaciones. No crea el sistema de *homestead* como una caridad. No tiende el manto de su protección sobre el pobre que carece de hogar. No distingue entre el pobre y el rico en su política para la conservación de los hogares existentes. No se limita, como popularmente se ha supuesto, a cubrir con su escudo al deudor contra el acreedor, con excepción de muy pocos estados."

Arguye el apelante que de la lectura de nuestra ley surge claramente que el *homestead* creado por la misma constituye

una exención, un privilegio otorgado al jefe de familia, a virtud del cual se establece una excepción a la regla general de que todos los bienes del deudor vienen obligados al pago de sus deudas. Nada tenemos que decir en cuanto al derecho, con sabor de privilegio, que se crea en beneficio de la familia. Consideramos, sin embargo, que este derecho puede ser de naturaleza real si recae directamente sobre la cosa objeto del *homestead.* En cuanto a la exención concedida para proteger el hogar, hay que convenir que tiene ciertas características o peculiaridades que no se advierten en aquellas exenciones que se limitan a impedir que el acreedor ponga sus manos en ciertos bienes de su deudor.

En el caso de *Young* v. *Olivares,* supra, citado por la parte apelante, la Corte Suprema de Filipinas, refiriéndose al *homestead,* dice que el derecho de exención no es un derecho real sobre bienes, que constituye más bien una restricción positiva para impedir que el funcionario ponga sus manos en ella. "Siendo ésta la índole de la exención," continúa diciendo el tribunal, "resulta que el grado de interés que el deudor tiene sobre la finca que alega ser *homestead* carece completamente de importancia." La Enciclopedia Jurídica Española, hablando del "homestead exemption", en un estudio interesante de la referida institución, dice que el *homestead* no crea un derecho *in rem,* sino un derecho estrictamente personal y que bajo este concepto no puede ser objeto de cesión o traspaso.

La exención, sin embargo, puede distinguirse de las demás exenciones prescritas por la ley para favorecer al deudor. En primer lugar, la base fundamental del *homestead* es la protección de la familia, aunque haya alguno que otro estatuto que provea exenciones para los deudores pobres, las viudas necesitadas y los huérfanos solamente. Generalmente el deudor puede disponer de los bienes exentos de ejecución, de los cuales disfruta mientras quiere. No pasa así con el *homestead.* El jefe de familia no puede renunciar al mismo sin el consentimiento de su esposa, ni tampoco puede dis-

poner de este derecho por testamento. La exención dura mientras haya una familia que proteger y exista el fundamento básico del. *homestead.* Cuando desaparecen los fines para que el mismo fué creado, los bienes tornan a responder de las obligaciones contraídas.

Waples, en la obra citada, página 3, dice:

"La conservación del hogar de la familia es el propósito de la legislación del *homestead.* La política del estado es fomentar las familias como los factores de la sociedad y así estimular el bienestar general. Para salvar a estas familias de desintegración y asegurar su permanencia, el legislador procura proteger sus hogares de ventas forzosas en tanto en cuanto pueda hacerlo sin injusticias a terceros.

"El lector notará la diferencia importante entre la política de conservar los hogares para el bien de la sociedad y el estado, y la política de salvar de ejecución la propiedad de los deudores pobres para su propio beneficio. Y como se dirá más adelante, los estatutos de *homestead* no son leyes de pobreza hechas para el beneficio de los necesitados solamente. Estos estatutos protegen los hogares de todas las clases. Cualquier jefe de familia, por solvente y acomodado que sea, puede edificar su hogar, bajo las disposiciones del estatuto, y sentirse seguro de que cualesquiera que sean las deudas que pueda contraer o los obstáculos que puedan las mismas originarle, el hogar de su familia está seguro. Es evidente, por lo tanto, que bajo el sistema prevaleciente de *homestead* (descartando aquellos raros estatutos que disponen exención para los dudores pobres, las viudas necesitadas y los huérfanos solamente), la política no es asegurar al sostenedor de un hogar cierta porción de propiedad real ni servir solamente los intereses de las personas inmediatamente beneficiadas, sino proteger los hogares como los pilares del edificio del estado. Los efectos caritativos de las leyes de *homestead* son simplemente incidentales.

"Las razones que apoyan la liberalidad de esta política son persuasivas y de fácil apariencia. Las familias son las unidades de la sociedad, factores indispensables de la civilización, las bases de la comunidad. De su permanencia en la comunidad depende el éxito de las escuelas, las iglesias, las bibliotecas y las buenas instituciones de todas clases. Los sentimientos del patriotismo y la independencia, el espíritu de la libre ciudadanía, el sentimiento del interés en los negocios públicos, son cultivados y fomentados con mayor pron-

titud cuando los ciudadanos viven permanentemente en su propio castillo con un sentido de su protección y durabilidad.

"El estado está interesado en las relaciones conyugales y paternales; en fomentar los matrimonios y el levantamiento de los niños, en la moralidad, refinamiento y religión de las familias y comunidades; y, por otro lado, se siente herido y su prosperidad puesta en peligro, por la prevalecencia de los divorcios y por todo aquello que tiende hacia la desintegración de la familia y la destrucción de los hogares. El proverbio: 'Cuando la pobreza toca a nuestras puertas, el amor huye por la ventana,' no es invariablemente cierto. La bella descripción que aparece en 'Irving's Sketch Book', de la mujer consolando y alentando a su marido que perdió su fortuna, no es excepcional; pero, ¿no es cierto que cuando el hogar ha desaparecido, la tendencia es contra el saludable desarrollo de los sentimientos anteriormente mencionados que conducen al bienestar del estado?"

El Tribunal Supremo de Alabama, en el caso de *Watts* v. *Gordon*, 65 Ala. 546, se expresa así:

"El gran fin que predomina en toda la Constitución y la política que la informa, es amparar y conservar el *homestead*—el sitio de residencia. Un pueblo sin casa, sin hogar, es una carga para la energía y para la industria, y un elemento corruptor para la moral de la colectividad de que sus individuos sean miembros. No puede caer sobre una familia mayor calamidad, fuera de las que llevan el estigma del delito, que la de ser lanzada del hogar bajo el cual se ha formado y ha tenido abrigo. No es el fin de la Constitución, ni el de las leyes positivas, amparar la propiedad o los derechos reales, sea cual fuere su superioridad o su inferioridad, simplemente porque se trata de propiedad o de derechos reales. . . . Lo que debe ampararse y conservarse es el hogar, la morada—no necesariamente la propiedad inmueble o los derechos reales. De ordinario al hogar van unidos semejantes derechos; pero en caso contrario constituye una desgracia para el ocupante y para los que de él dependen, y le sujeta a una responsabilidad a la cual no estaría expuesto en el caso de que el hogar llevara consigo dicha propiedad o derechos reales. . . El que estas casas que implican el derecho legal al uso y ocupación del terreno sobre que se asientan constituyan *homestead*, para los efectos de la Constitución y estén amparadas por ella, es cosa que depende, no de la cantidad ni de la calidad de los bienes del arrendatario, sino de la índole y naturaleza del acto en virtud del cual han sido levantadas, y de la intención del arrendatario, según se manifieste por el uso a que las mismas se destinan."

De la Enciclopedia Jurídica Española, tomo 18, pág. 270, tomamos lo siguiente:

"La institución del *homestead* ha sido combatida por algunos, razón habida a que los privilegios de *insecuestrabilidad* y de *inalienabilidad* que la informan vienen a ser algo así como una supervivencia de los antiguos fideicomisos. El ilustre profesor italiano Santangelo Spoto, que ha justificado con buena copia de argumentos la razón de ser de uno y otro principio, en varios artículos doctrinales y en su libro *La legislazione civile e i Beni di famiglia* (1), la denomina *fidecomesso democratico*, y hace de ella una apología entusiástica, afirmando que este nombre no debe asustar al legislador ni al ciudadano, pues, *tempora mutantur et nos mutamur cum illis,* y así como cambian de significación las palabras, varían también con el tiempo las cosas y las instituciones que con ellas se designan. No es el *fideicomiso democrático*—dice—la consagración jurídica del grande dominio, del feudo, para garantir a las familias de los nobles la posesión de la fuerza con la que dominaban a los demás, y a la Iglesia la potestad de abatir a los poderosos y a las testas coronadas; 'es la consagración jurídica de aquella *mínima propiedad* mediante la cual una familia puede vivir trabajando con sus propios brazos; es el fideicomiso del trabajo, que sirve para asegurar a la familia del labrador del campo, del pequeño propietario rústico, el uso y disfrute de aquellos medios necesarios de producción y de vida, sin los cuales sucumbiría continuamente en la lucha con la gran propiedad, con el capitalismo vampiro' (2)."

Y últimamente en una nota puesta al calce del caso *Andrews* v. *Security National Bank,* 83 A.L.R. 54, dice el comentarista lo que sigue:

"Toda la teoría de la ley relativa a hogar seguro descansa en la idea de que como cuestión de conveniencia pública para la promoción de la prosperidad del estado y para independizar económicamente a cada uno de los ciudadanos que le constituyen no es sino propio que tengan un hogar donde albergar su familia y donde puedan vivir más allá de las garras de la la adversidad y de las demandas de acreedores que les han dado crédito bajo tal ley. Su propósito es asegurar a todo dueño de casa de un hogar para él y su familia, irrespectivamente de su situación económica, ya fuere solvente o insolvente; independientemente del número de sus acreedores; y sin considerar especialmente el alcance de su fortuna o el

título con que posea su hogar seguro. Un estatuto de hogar seguro no se basa en forma alguna en los principios de equidad ni en manera alguna cede a ellos. La política del estado es preservar el hogar de la familia aun a expensas de justas demandas, pues considera que la preservación del hogar es de importancia suprema. En cumplimiento de este objetivo es que no se puede hacer una enajenación o renuncia efectiva de la exención de hogar seguro a menos que se sigan con razonable exactitud las disposiciones del estatuto."

Waples titula su obra "Homestead and Exemption", estableciendo cierta diferencia entre el significado de una y otra palabra. *Homestead,* en su sentido legal, significa, según el autor, la residencia de una familia, adueñada, ocupada, dedicada, limitada, exenta y con restricciones en cuanto a la facultad de enajenar según lo dispongan los estatutos. "Siendo la exención una de las características del *homestead,* ¿por qué se usa separadamente en el título de este tratado? *¿Why homestead and exemption?"* El autor se formula estas preguntas y explica que si el tratado se limitara al hogar, a la residencia propiamente dicha, no sería necesario el uso de la última palabra; pero como la exención se extiende a proteger de venta forzosa bienes muebles (*chattels*) y otros inmuebles que no son *homestead,* considera que no es superfluo el uso de dicha palabra.

En el caso *In re Trammell,* 5 Fed. (2d) 327, se expresa con mayor claridad la distinción que se observa entre una y otra palabra. En este caso dice la corte:

"Recuérdese que *homestead* y exención son cosas completamente diferentes. *Homestead* es propiamente el sitio del hogar—el hogar y el terreno adyacente. Bouvier's Law Dictionary, 3ª ed. Es, por lo tanto, propiedad inmueble. Cuando se establece conforme a los requisitos del estatuto comúnmente está exenta de venta forzosa, concediéndosele a la familia derechos especiales. Una exención es el derecho concedido por la ley a un deudor para retener una porción de su propiedad, libre de ejecución judicial a instancias de un acreedor, o de ser desposeído por renta. Bouvier's Law Dictionary, 3ª ed. Este derecho del deudor puede referirse a bienes inmuebles o muebles, o a ambos."

El propósito de la legislación relacionada con el *homestead* se realiza haciendo efectiva la exención e imponiendo limitaciones sobre el *jus disponendi* por venta o testamento. A este respecto dice Waples:

"Es la propiedad, no un privilegio relacionado con ella—o un derecho no disponible o un *cuasi-estate* que no envuelva derecho de propiedad no transferible—lo que se declara exento de ejecución. Es la propiedad que, en ausencia de exención, podría ser ejecutada. Los derechos y privilegios personales no disponibles no son responsables de ejecución bajo ninguna circunstancia. Pueden perderse por ejecución de aquello en que descansan si no se hace reserva alguna; y, bajo algunas circunstancias, han sido reservados en ventas de *homestead*. Son beneficios inseparablemente conectados con el *homestead*, pero que no lo constituyen."

Ahora bien, ¿qué carácter tiene este derecho creado por la ley? ¿Cuál es el nombre que ha recibido en la nomenclatura legal americana? Las decisiones de los tribunales en los respectivos estados dependen, desde luego, de la forma en que están redactados los estatutos locales, y aun cuando se advierte cierto conflicto en las autoridades, puede decirse que la naturaleza del *homestead* es prácticamente la misma en todos los estados donde la propiedad real ha sido exenta de ejecución y se han impuesto ciertas limitaciones en los derechos dominicales del dueño. El capítulo noveno de la obra de Waples se titula "Quasi-Estate of Homestead." Apunta el autor que la frase *estate of homestead* se ha venido usando en cierto grado, aunque ha sido evadida por los tribunales en la mayoría de los estados. "Si esta frase," dice el autor, "fuese empleada en el sentido en que nosotros hablamos de la dote como un *estate*, significando, por ejemplo, que es un *estate* de por vida o por años, puede que no condujera a error. Si, por el contrario, la usamos como si se designase una nueva clase de *estate*, diferente de los ya establecidos, podríamos crear confusión, si no conducir a error." *"What kind of an estate in land?"*, se pregunta el mismo autor. *"It is one in fee, or for life, or for a term, or at*

*will: not a new kind of estate in land. The estate of home-stead has no independent existence, apart from the title. However, it resembles an estate in some respects: hence the title of this chapter."*

"El interés que surge del *homestead*," dice la Corte Suprema de Washington en *Whitworth* v. *McKee,* 72 Pac. 1051, "es algo más que un simple privilegio conferido por la legislatura como un acto de gracia que pueda ser retirado o destruído a su capricho. Es, en realidad, un interés adquirido."

Y la Corte Suprema de Nebraska, en *Galligher* v. *Smiley,* 28 Neb. 189, declara que el *homestead,* aunque quizás no constituye un nuevo *estate,* participa de un interés o derecho en el hogar, investido de tal modo en el dueño que no puede ser destruído por la legislatura, mediante la derogación de la ley que le dió vida.

No trasmite el *homestead* propiedad o título alguno ni su constitución tiene el efecto de cambiar el *status* del dueño en cuanto a la propiedad. La ley se limita a conceder al jefe de familia el derecho de continuar en el goce y disfrute de su hogar y a decirles a los acreedores que no pueden poner sus manos en él. Esto, a nuestro juicio, es bastante. El derecho del jefe de familia a continuar poseyendo lo que es suyo, pero que dejaría de serlo a no ser por la protección concedida por la ley, recae directamente sobre la cosa y está de tal suerte unido a ella que el *homestead* no tendría existencia si se separase del título de la propiedad. No se nos oculta, como observa Waples, que los derechos de la propiedad, base del *homestead,* están condicionados por negaciones. El dueño no puede disponer de la misma por testamento ni venderla por su sola actuación, y sus acreedores tampoco pueden hacerla responsable para satisfacer sus créditos; pero, ampliando lo que dijimos en *Manescau* v. *Usera,* supra, todo recae sobre un inmueble, más bien que girar a su alrededor, y de acuerdo con las disposiciones del artículo 75 del Código de Enjuiciamiento Civil, en relación con nuestra

ley sobre *homestead,* la acción en que se reclame este derecho debe ejercitarse en el sitio donde radique la finca.

Si examinamos detenidamente la ley de Puerto Rico, veremos que tiene mucha analogía con la ley en vigor en el estado de *Illinois.* El artículo primero de esta ley, transcrito en el caso de *Browning* v. *Harris,* 99 Ill. 460, dice así:

"That every householder having a family 'shall be entitled *to an estate of homestead,* to the extent and value of one thousand dollars, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and *all right and title therein,* shall be exempt from attachment, judgment, levy or execution, sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided'."

El artículo 1ro. de la ley de Puerto Rico dice, en lo pertinente, así:

"That every householder, having a family, shall be entitled *to an estate of homestead* to the extent and value of five hundred dollars in a farm, plantation, or lot of land, and buildings thereon, owned, or lawfully possessed, by lease or otherwise, and occupied by him or her, as a residence, and such homestead and *all right and title therein,* shall be exempt from attachment, judgment, levy or execution, except for the taxes due thereon, or purchase price of said property, or liability incurred for the improvements placed thereon, and except as hereinafter prescribed. . ."

Las disposiciones de estos artículos tienen mucho parecido. En realidad puede decirse que nuestra ley de *homestead* es una adaptación de la de Illinois con algunas modificaciones, como apunta el Sr. Muñoz Morales en la Revista Jurídica de la Universidad de Puerto Rico, vol. 4, pág. 88. Hemos llegado a esta conclusión después de haber examinado las leyes de los diversos estados, que Waples transcribe sustancialmente en el apéndice de su obra. La ley de Illinois, como la nuestra, habla de un *estate of homestead* a que tiene derecho el jefe de familia y declara exentos de ejecución *all right and title therein.* Las decisiones de la Corte Suprema

de Illinois deben estudiarse a la luz de las leyes vigentes sobre la materia en la fecha en que fueron emitidas. En las decisiones en que se interpreta la ley de 1851, se sostiene que de acuerdo con la misma no existe un *estate in land*. Pero en las últimas decisiones en que se estudia, analiza y comenta la ley de 1873 el mismo tribunal declara que la ley vigente crea un *estate of homestead*.

La Corte Suprema de los Estados Unidos, en el caso de *Black* v. *Curran,* 81 U. S. 463, adoptó, conforme a su costumbre tradicional, el criterio de la corte local y sostuvo, interpretando la antigua ley, que la misma no creaba un *estate in land*. En el caso de *Browning* v. *Harris,* supra, la Corte Suprema de Ill., interpretando la ley de 1873, que, dicho sea de paso, ha sufrido algunas enmiendas, se expresa así:

"Puesto que el derecho de *homestead* ha sido, por la ley enmendatoria de 1873, convertido en un *estate,* hay que concluir que, como ocurre con todos los demás *estates,* no puede tener existencia separada, independientemente del título que constituye uno de sus elementos esenciales. Cada dueño de un *homestead,* bajo la presente ley, tiene un *estate* en la propiedad, ya sea en *fee* (dominio) de por vida o por años (*for life or years*) hasta cubrir una cantidad de $1,000. Cuando el jefe de familia, teniendo el dominio de la propiedad, muere, y el derecho pasa al cónyuge sobreviviente, marido o mujer, por operación de la ley, se crea un usufructo durante su vida (*life estate*) para el propósito de tal *estate of homestead,* y los herederos recuperarán el dominio solamente cuando termine este usufructo. De igual manera, cuando el hogar seguro pasa a los hijos de la familia, se crea un usufructo por años (*estate for years*) por operación de la ley, para los propósitos de tal *estate of homestead* en los hijos."

Las disposiciones de la ley de Illinois y la de Puerto Rico en este respecto son iguales, con la diferencia de que allí se le llama *estate for life* al derecho que adquiere el viudo o viuda cuando pasa a disfrutar del derecho de *homestead* y aquí le llamaríamos usufructo viudal. Lo mismo ocurre con los menores. Allí se le llama *estate for years* y aquí podría

llamarse usufructo temporal, puesto que dura hasta que los hijos adquieren la mayoridad.

En el caso de *Fritts* v. *Fritts,* 131 N. E. 584, resuelto por la Corte Suprema de Illinois, dice dicho tribunal, interpretando la misma ley:

"Es una regla en este estado que el *homestead* es algo más que un derecho de ocupación, exento de embargo y venta por deudas. Cuando el terreno ocupado como *homestead* no excede en valor de $1,000, no puede constituirse ningún gravamen en tal terreno ni llevarse a cabo ninguna venta válida durante la existencia del *homestead estate,* aunque se procure vender tal propiedad sujeta al derecho de *home tead.* El terreno comprendido en el mismo no puede ser vendido para pagar las deudas del dueño de la tierra durante la vida de su viuda y la minoridad de sus hijos."

Las disposiciones que menciona y comenta el tribunal de Illinois aparecen en el artículo cuarto de nuestra ley de *homestead,* que figura hoy con el número 544 en nuestro Código Civil, edición 1930. Según este artículo, no se hará venta alguna, por virtud de sentencia o ejecución, de ninguna estancia, plantación o predio de terreno y de los edificios que contengan, cuando la misma sea reclamada u ocupada como hogar seguro, a menos que se obtenga por ella una suma mayor de $500. Nuestra ley, como la de Illinois, prohíbe en absoluto la venta de la propiedad cuando la misma no tiene un valor mayor de $500 o cuando no pueda obtenerse una suma en exceso de esta cantidad.

En cuanto a la moción de traslado denegada por la Corte Municipal de Ciales, entendemos que dicho tribunal se ajustó a las disposiciones de la ley. De acuerdo con el artículo 75 del Código de Enjuiciamiento Civil, deberán sustanciarse en el distrito en que radica el objeto de la acción, o parte del mismo, sin perjuicio de la facultad de la corte para cambiar el lugar de la vista, los pleitos *for the recovery of real property, or of any estate or interest therein, etc.* Usamos el texto inglés porque habiendo sido estas leyes redactadas originalmente en este idioma, queremos poner de relieve la

semejanza existente entre el *estate or interest therein* de que habla el artículo citado y el *estate of homestead, right and title therein* de que habla nuestra ley sobre hogar seguro. El artículo 75 dice claramente que una acción para recobrar un *estate or interest therein* debe celebrarse en el sitio donde radique el objeto de la acción. En el presente caso Nicolás Padilla Rivera, que es un jefe de familia con esposa e hijos, ha sido amenazado, según se alega en la demanda, por el Federal Land Bank of Baltimore, con ser desalojado de la finca donde tiene constituído su hogar seguro. El demandante en el pleito en reclamación de *homestead* solicita que se le deje en la finca, reconociéndole su derecho de *homestead* en la misma, o que se le entregue una cantidad por valor de $500. No surge de las alegaciones de la demanda el valor de la finca, pero es claro que la base fundamental de este litigio es *the estate of homestead,* cuyo reconocimiento se reclama en la finca de que está en posesión Nicolás Padilla y que, por consiguiente, el juicio debe celebrarse donde radica el inmueble, que es en el municipio de Ciales.

*Debe confirmarse la sentencia apelada.*