José González Lueso, recurrente y apelante, *v.* Corte Municipal de Ciales, Hon. Luis Martorell, Juez, recurrido y apelado; y Epifanio Rodríguez Santiago, Interventor, demandante en el pleito principal.

Núm. 7425.—*Sometido:* Marzo 10, 1938. *Resuelto:* Diciembre 22, 1938.

*V. Polanco de Jesús,* abogado del apelante; *Angel Rivera Colón,* abogado del interventor.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Epifanio Rodríguez constituyó hipoteca voluntaria a favor de José González Lueso sobre su mitad indivisa en una finca que medía aproximadamente cuarenta cuerdas, para garantizar un préstamo de $1,256.72. El derecho de hogar seguro fué expresamente reservado y Rodríguez residía en dicha finca al momento en que se otorgó el contrato. El acreedor ejecutó la hipoteca y después de serle adjudicado el interés del deudor, éste radicó demanda en la corte municipal correspondiente en reclamación de su derecho de hogar seguro. Rodríguez nunca había abandonado la posesión de la finca. El acreedor tuvo la opción de pagarle $500 a Rodríguez o de separar y traspasarle el título a la casa con terrenos sufi-

cientes ·hasta cubrir dicha suma.   No cumplió con ninguna de dichas alternativas y el deudor demandante trató de ejecutar su sentencia.

Después de la ejecución de la hipoteca pero antes de radicarse el pleito de hogar seguro, el acreedor y los otros comuneros privadamente convinieron en dividir la comunidad de bienes y el interés envuelto en el presente litigio se fijó en quince cuerdas y una casa.   La corte municipal ordenó la ejecución de la sentencia contra dichas quince cuerdas y González Lueso recurrió ante la Corte de Distrito de Arecibo por *certiorari* para revisar dicha orden.   El presente recurso de apelación ha sido interpuesto contra las decisiones de la corte de distrito rehusando expedir el auto de *certiorari* y negándose a reconsiderar su negativa.

■ Aunque se señalaron cinco errores, solamente dos verdaderas cuestiones necesitan ser consideradas.   La primera de éstas se refiere a la posibilidad de establecer y reclamar un derecho de hogar seguro en el interés pro indiviso que pueda tener una persona sobre una propiedad inmueble. En el caso de *López Rudón* v. *López,* 48 D.P.R. 324, resolvimos que la viuda del dueño de una participación indivisa en bienes de una comunidad podía defenderse con éxito de un desahucio entablado por el acreedor de su esposo basándose en la defensa de que ella había sucedido al derecho de hogar seguro que su esposo tenía establecido en dicha propiedad. No vemos razón alguna para variar dicho criterio.

■■ El otro punto envuelto es si el procedimiento seguido por la corte municipal estuvo correcto.   Asumiremos, ya que no se levanta cuestión alguna de hecho, que el apelado reside en la porción de terreno adjudicádale al apelante cuando este último dividió o trató de dividir la comunidad de bienes con los demás.

El derecho de hogar seguro ha sido diversamente caracterizado como un gravamen sobre la propiedad, un título (*estate*), un cuasi título (*quasi-estate*) y como un derecho al uso y ocupación de un hogar.   La determinación de su ver-

dadera naturaleza es cuestión evasiva pero se ha establecido definitivamente un principio fundamental al efecto de que la legislación que establece el derecho de hogar seguro tiene por miras la protección y conservación de hogares ya exis-tentes al tiempo de efectuarse la venta forzosa o ejecución de la sentencia y no la creación de hogares para las clases menesterosas. Su objetivo principal es proteger más que remediar.

Hay varios casos de esta corte en que se ha discutido la naturaleza del derecho de hogar seguro. La Sección 1 de la Ley de Hogar Seguro de marzo 12, 1903, que es la ley aplicable al presente caso (Estatutos Revisados de 1911, Sección 1000) dispone:

"Que todo jefe de familia, que tenga familia, tendrá derecho a una finca de *homestead*, hasta el valor de quinientos *dollars* ($500) en una estancia, plantación o predio de terreno y en los edificios contenidos en el mismo, que le pertenezca o que posea legalmente, en virtud de arrendamiento o en otra forma, y estuviere ocupado por él o ella como su residencia; y dicho *homestead* y todo derecho o título sobre el mismo estará exento de embargo, sentencia, exacción o ejecución, excepción hecha de las contribuciones que adeudare, el valor de la venta (compra) de dicha propiedad o la responsabilidad incurrida por mejoras que se hicieren en la misma, y excepción hecha también de lo que más adelante se establece; *Disponiéndose,* que en caso de arrendamiento u otro contrato análogo nada de lo contenido en esta ley se interpretará en el sentido de que se prohiba al dueño o propietario de dicha estancia, plantación o predio de terreno, y de los edificios contenidos en el mismo, entrar de nuevo en posesión de dicha propiedad de acuerdo con lo estipulado en dicho contrato de arrendamiento o convenio, al faltarse al cumplimiento de las condiciones del mismo."

Aunque pueden aducirse muchos argumentos en favor de cualquiera de las teorías arriba expuestas en cuanto a la naturaleza del derecho de hogar seguro, por lo menos en esta jurisdicción parece haberse establecido claramente que dicho derecho ha sido clasificado no indefinidamente como un *"estate"* sino como un *"estate"* en la propiedad. En el caso

de *Federal Land Bank* v. *Corte Municipal,* 47 D.P.R. 942, el Juez Asociado Sr. Córdova Dávila, dijo:

"El propósito de la legislación relacionada con el *homestead* se realiza haciendo efectiva la exención e imponiendo limitaciones sobre el *jus disponendi* por venta o testamento. A este respecto dice Waples:

" 'Es la propiedad, no un privilegio relacionado con ella—o un derecho no disponible o un *cuasi-estate* que no envuelva derecho de propiedad no transferible—lo que se declara exento de ejecución. Es la propiedad que, en ausencia de exención, podría ser ejecutada. Los derechos y privilegios personales no disponibles no son responsables de ejecución bajo ninguna circunstancia. Pueden perderse por ejecución de aquello en que descansan si no se hace reserva alguna; y, bajo algunas circunstancias, han sido reservados en ventas de *homestead.* Son beneficios inseparablemente conectados con el *homestead,* pero que no lo constituyen.'

" .    .    .    .    .    .    .    .    .    .

"No transmite el *homestead* propiedad o título alguno ni su constitución tiene el efecto de cambiar el *status* del dueño en cuanto a la propiedad. La ley se limita a conceder al jefe de familia el derecho de continuar en el goce y disfrute de su hogar y a decirles a los acreedores que no pueden poner sus manos en él. Esto, a nuestro juicio, es bastante. El derecho del jefe de familia a continuar poseyendo lo que es suyo, pero que dejaría de serlo a no ser por la protección concedida por la ley, recae directamente sobre la cosa y está de tal suerte unido a ella que el *homestead* no tendría existencia si se separase del título de la propiedad. . . .

" .    .    .    .    .    .    .    .    .    .

". . . En el caso de *Browing* v. *Harris*, 99 Ill. 460, la Corte Suprema de Illinois, interpretando la ley de 1873, que, dicho sea de paso, ha sufrido algunas enmiendas, se expresa así:

" 'Puesto que el derecho de *homestead* ha sido, por la ley enmendatoria de 1873, convertido en un *estate,* hay que concluir que, como ocurre con todos los demás *estates,* no puede tener existencia separada, independientemente del título que constituye uno de sus elementos esenciales. Cada dueño de un *homestead,* bajo la presente ley, tiene un *estate* en la propiedad, ya sea en *fee* (dominio) de por vida o por años (*for life or years*) hasta cubrir una cantidad de $1,000. Cuando el jefe de familia, teniendo el dominio de la propiedad, muere, y el derecho pasa al cónyuge sobreviviente,

marido o mujer, por operación de la ley, se crea un usufructo durante su vida (*life estate*) para el propósito de tal *estate of homestead*, y los herederos recuperarán el dominio solamente cuando termine este usufructo. De igual manera, cuando el hogar seguro pasa a los hijos de la familia, se crea un usufructo por años (*estate for years*) por operación de la ley, para los propósitos de tal *estate of homestead* en los hijos.'

"Las disposiciones de la ley de Illinois y la de Puerto Rico en este respecto son iguales, con la diferencia de que allí se le llama *estate for life* al derecho que adquire el viudo o viuda cuando pasa a disfrutar del derecho de *homestead* y aquí le llamaríamos usufructo vidual. Lo mismo ocurre con los menores. Allí se le llama *estate for years* y aquí podría llamarse usufructo temporal, puesto que dura hasta que los hijos adquieren la mayoridad.

"En el caso de *Fritts* v. *Fritts*, 131 N. E. 584, resuelto por la Corte Suprema de Illinois, dice dicho tribunal, interpretando la misma ley:

"'Es una regla en este estado que el *homestead* es algo más que un derecho de ocupación, exento de embargo y venta por deudas. Cuando el terreno ocupado como *homestead* no excede en valor de $1,000, no puede constituirse ningún gravamen en tal terreno ni llevarse a cabo ninguna venta válida durante la existencia del *homestead estate*, aunque se procure vender tal propiedad sujeta al derecho de *homestead*. El terreno comprendido en el mismo ro puede ser vendido para pagar las deudas del dueño de la tierra durante la vida de su viuda y la minoridad de sus hijos.'

"Las disposiciones que menciona y comenta el tribunal de Illinois aparecen en el artículo cuarto de nuestra ley de *homestead,* que figura hoy con el número 544 en nuestro Código Civil, edición 1930. Según este artículo, no se hará venta alguna, por virtud de sentencia o ejecución, de ninguna estancia, plantación o predio de terreno y de los edificios que contengan, cuando la misma sea reclamada u ocupada como hogar seguro, a menos que se obtenga por ella una suma mayor de $500. Nuestra ley, como la de Illinois, prohibe en absoluto la venta de la propiedad cuando la misma no tiene un valor mayor de $500 ó cuando no pueda obtenerse una suma en exceso de esta cantidad."

■ Somos de opinión que bajo la teoría del caso de *Federal Land Bank* v. *Corte Municipal,* supra, el deudor a quien se le trata de ejecutar la propiedad sujeta al derecho de

hogar seguro para el pago de sus deudas, tiene el derecho afirmativo de recibir $500 ó de que se le separe un pedazo de terreno de dicho valor, siempre asumiendo para la última alternativa que su propiedad valga más de $500. De todos modos, el acreedor tiene derecho a devolver al deudor su finca original en completo pago de la reclamación de hogar seguro valga ésta o no $500. El deudor tiene derecho a uno de los siguientes remedios:

1. Si la finca vale menos de $500 tiene derecho a conservar la misma o recibir la suma de $500 de manos del acreedor.

2. Si la finca vale más de $500 tiene derecho a—

    (*a*) Recibir $500 ó

    (*b*) Que se le asigne un pedazo de la finca original por dicho valor.

▆ Es la propiedad la que está exenta de venta y no el derecho de hogar seguro. Desde luego, tan pronto como la propiedad pierde su carácter como hogar seguro, queda sujeta inmediatamente al pago de las deudas de su dueño.

*La sentencia y resolución apeladas deben ser confirmadas.*

Los Jueces Sres. Presidente Del Toro y Asociado De Jesús no intervinieron.