# 98 DTA 174

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN**

ALFREDO CINTRON ARCE
Demandante-Apelado

v.

LUZ E. MATEO
Demandada

Núm. KLAN-96-01211

San Juan, Puerto Rico, a 22 de abril de 1998

Panel integrado por su Presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante recurso de apelación Luz E. Mateo (en adelante, Mateo) solicita la revisión de la Sentencia Parcial emitida el 16 de octubre de 1996 por el Tribunal de Primera Instancia, Sala Superior de San Juan, que denegó la moción de desestimación que Mateo presentara en el pleito de liquidación de bienes gananciales incoado por su ex-esposo, Alfredo Cintrón Arce (en adelante, Cintrón).

La Sentencia fue notificada el 25 de octubre de 1996, el recurso de apelación fue oportunamente presentado el 25 de noviembre de 1996. El 4 de diciembre de 1996, Mateo presentó Moción Informativa Sometiendo Documentos y Solicitando Enmienda debido a que el tribunal de instancia había emitido Sentencia enmendada el 21 de noviembre de 1996. Al así hacerlo, instancia tornó en académico el segundo señalamiento de error levantado en la apelación. Mateo solicitó la transcripción de los procedimientos en instancia y accedimos mediante Resolución del 31 de enero de 1997.

Cintrón presentó Moción de Desestimación el 31 de enero de 1997 y Mateo presentó su Réplica el 11 de febrero de 1997. En junio de 1997, Cintrón compareció en escrito de Oposición a Apelación, al cual replicó la parte apelante posteriormente.

Una vez fue recibida la transcripción de evidencia el 27 de junio de 1997, procedimos a emitir Resolución para requerir la presentación del alegato suplementario, a tenor con la Regla 21 del Reglamento de este Tribunal. El 15 de agosto de 1997, Mateo dio cumplimiento a orden y Cintrón hizo lo propio el 5 de septiembre de 1997. Así las cosas, y tras analizar el derecho aplicable, este Tribunal decidió REVOCAR la Sentencia recurrida.

I

Cintrón y Mateo contrajeron matrimonio en 1979 y procrearon dos hijos. La hija mayor, Yshamil, cuenta con 16 años de edad y Alfredo tiene 12.

Cintrón, de 38 años, es técnico de electrónica y está pensionado por incapacidad por el Seguro Social. Desde 1991 recibe una pensión mensual de $865.00. Además, hace reparaciones de equipos electrónicos, por las cuales recibe ingresos adicionales. Mateo, de 34 años de edad, por su parte, obtuvo un grado asociado en ciencias secretariales mientras estuvo casada. No obstante, a petición de su esposo, ella estaba dedicada a las labores del hogar y cuido de los hijos. De vez en cuando, Mateo realizaba trabajos clericales remunerados, para su hermano y otras personas.

Desde su nacimiento, los menores Alfredo y Yshamil han vivido en la residencia conyugal de sus padres en la Urbanización Santiago Iglesias, Río Piedras. Ambos asisten a escuelas cercanas a su hogar y tienen amistades de esa área.

El 28 de julio de 1994, Mateo interpuso demanda de divorcio. No fue hasta el 18 de diciembre de 1995, que el vínculo matrimonial que unía a Cintrón y Mateo quedó disuelto mediante Sentencia Enmendada. A la fecha del divorcio, la masa ganancial sujeta a división estaba compuesta por la referida residencia conyugal (libre de cargas o gravámenes), el mobiliario y dos automóviles.

La acción de liquidación de bienes gananciales fue iniciada por Cintrón el 30 de abril de 1996. En la misma, solicitó la división de la residencia conyugal, el mobiliario, automóviles y una cuenta bancaria.

Mateo presentó su Contestación y una Moción de Desestimación el 15 de mayo de 1996. En la Contestación, la demandada negó que los fondos depositados en la cuenta bancaria estuvieran sujetos a división porque provienen de una pensión que el Seguro Social otorga a los hijos menores por motivo de la incapacidad de su padre.

Por otro lado, en su Moción de Desestimación, Mateo levantó su derecho a permanecer en la residencia conyugal con los hijos hasta que éstos adquirieran la mayoría de edad, bajo la doctrina de hogar seguro, según establecida en *Cruz v. Irizarry*, 107 D.P.R. 655 (1978). Cintrón presentó su Oposición a la Desestimación el 27 de agosto de 1996.

El tribunal de instancia celebró vista el 20 de septiembre de 1996 y emitió Sentencia el 16 de octubre de 1996. En ésta, declaró No Ha Lugar a la Moción de Desestimación y ordenó la venta de la residencia en pública subasta dentro de seis meses. El tribunal consideró que ese término era suficiente para que Mateo lograra conseguir un trabajo que le pagara suficiente como para poder asumir el pago de una nueva vivienda para ella y los dos hijos. También ordenó la consignación de los fondos habidos en la cuenta de los menores hasta que cumplan su mayoría de edad o sean retirados en caso de necesidad, con autorización previa del tribunal.

Inconforme, Mateo apeló ante este Tribunal mediante el recurso de epígrafe, en el cual señaló como errores la negativa del tribunal *a quo* a reconocer el derecho a hogar seguro de los menores y haber ordenado la consignación de los fondos que el Seguro Social provee para los menores y sobre los cuales dicha agencia federal la ha designado como *"tutora"* o administradora.

El segundo señalamiento de error advino académico cuando el Tribunal de Primera Instancia emitió una Sentencia Enmendada en la cual dispuso que los fondos provenientes de la pensión de Seguro Social no son parte del caudal divisible.

En cuanto al único error restante, Cintrón manifiesta en sus alegatos que el tribunal de instancia actuó correctamente por cuanto su ex-cónyuge no demostró la situación extrema de necesidad económica del caso de *Cruz v. Irizarry, supra*, y que por el contrario tiene la preparación académica y experiencia suficiente para encontrar un nuevo empleo que junto a la participación que obtenga en la venta de la residencia conyugal, le permita adquirir otra vivienda para ella y los dos hijos.

A la luz del derecho aplicable, analizamos las posturas de ambas partes con respecto a la controversia del hogar seguro y decidimos REVOCAR la Sentencia recurrida.

## II

La equidad, como sabemos, está enraizada en la justicia misma. El concepto de la equidad en nuestro derecho equivale a la mitigación de la ley para hacerla justa, *"en aquellos casos en que por las circunstancias particulares del caso específico la aplicación de la ley hubiese resultado en una injusticia," Silva v. Comisión Industrial,* 91 D.P.R. 891, 900 (1965).

La solución de un reclamo de hogar seguro en casos de divorcio deberá estar fundada, en primer término, en los principios de la equidad. Así lo dispone, el Artículo 3 de la Ley Número 87 de 13 de mayo de 1936, 31 L.P.R.A. Sección 1853:

*"La exención establecida en la sección anterior continuará subsistente después de la muerte del jefe de familia a beneficio del cónyuge supérsite [sic] mientras éste continúe ocupando dicho hogar seguro, y después de la muerte de ambos cónyuges a beneficio de sus hijos hasta que el menor de éstos haya llegado a la mayoría. En casos de que el marido o la mujer abandonase su familia la exención continuará a favor del cónyuge que ocupe la finca como residencia; y en caso de divorcio el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso."* (Enfasis nuestro).

Así, pues, estamos ante uno de los casos en que *"por mandato del legislador la equidad se incorpora como parte del Derecho positivo y deja libertad al juzgador para que echando a un lado el rigor jurídico prefiera la solución estrictamente legal, una con sentido moral y humano que haga especial justicia al caso concreto ante él," Cruz v. Irizarry, supra,* página 660 (1978). ■

La conservación y protección de los hogares ya existentes, más que la creación de hogares para las clases menesterosas, ha sido identificada como objetivo de la legislación que reconoce el derecho a hogar seguro, *González Lueso v. Corte,* 54 D.P.R. 18 (1938). Los tribunales han interpretado liberalmente estos estatutos, sin aceptar restricciones que pudieran dificultar la aplicación de la ley de acuerdo con sus fines y propósitos, *García v. Pérez,* 46 D.P.R. 31, 40 (1934); *Vega Acosta v. Tribunal Superior,* 89 D.P.R. 408, 413 (1963).

El hogar seguro ha sido definido no como un título adicional a la propiedad y sí como un interés en la propiedad, *Vega Acosta v. Tribunal Superior, supra,* página 412; *Federal Land Bank v. Corte Municipal,* 47 D.P.R. 942, 951 (1935). El interés que surge del hogar seguro *"es más que un simple privilegio conferido por la legislatura como un acto de gracia que pueda ser retirado o destruído [sic] a su capricho. Es en realidad, un interés adquirido," Federal Land Bank v. Corte, supra,* citando con aprobación jurisprudencia de la Corte Suprema del estado de Washington. En el caso de los hijos menores de edad que enfrentan la venta en pública subasta de su único hogar tras la muerte de uno de sus padres, ese interés en la propiedad tiene el carácter de un usufructo temporal, puesto que dura hasta que adquieren la mayoridad, *Federal Land Bank, supra,* páginas 953-54.

En *Carrillo v. Santiago,* 51 D.P.R. 545 (1937), el Tribunal Supremo reconoció similar derecho, mientras ello fuese necesario, en el caso de hijos menores de edad que quedaban en igual situación a consecuencia del divorcio de sus padres:

*"A nuestro juicio el demandante, como jefe de familia con cuatro hijos menores a quienes educa y mantiene, tiene derecho al hogar seguro mientras conserve sus características, sin perjuicio de que cuando las pierda, cuando esa propiedad deje de constituir el hogar seguro del jefe de familia con sus hijos, la esposa pueda reclamar la mitad proindivisa de la propiedad."* ■

Esa norma de equidad fue reiterada en *Irizarry v. García,* 58 D.P.R. 280 (1941), donde confirmó una Resolución del tribunal de instancia que declaró Con Lugar una moción para adjudicar hogar seguro a favor de la ex-esposa, sin perjuicio de que el marido divorciado pudiera reclamar la mitad de dicha propiedad cuando los hijos alcanzaran la mayoría de edad o cuando por cualquier otra causa, la referida propiedad dejara de constituir el hogar seguro de la ex-esposa y sus hijos.

La norma establecida en estos casos quedó consolidada en *Cruz v. Irizarry, supra.* En aquel momento el Tribunal Supremo articuló las razones en equidad que permiten reconocer el derecho de

los hijos menores nacidos en el matrimonio a ocupar la residencia conyugal con el padre o madre custodio después del divorcio hasta su mayoridad o mientras sea necesario. La preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Su reclamación de gananciales en la vivienda que aloja a esta familia quedará paralizada **por el tiempo que subsistan las circunstancias que le dan calidad de hogar seguro** y mientras la recta razón de equidad ampare el derecho de sus ocupantes." *Supra*, página 660, (énfasis nuestro).

En otras palabras, el derecho a ocupar la residencia conyugal no afecta el derecho propietario de las partes, sino que meramente pospone o paraliza su ejecución. *"[E]l homestead [derecho a hogar seguro] creado por la Ley de 1936 no transmite propiedad alguna ni dispone del título existente," Quiñones v. Reyes,* 72 D.P.R. 304, 308 (1951). Es el uso de la propiedad y no el título lo que cambia, *Carrillo v. Santiago, supra.*

Ahora bien, esa paralización de la reclamación de bienes gananciales no ocurre automáticamente en todo caso de divorcio donde haya hijos menores. *"La solución en equidad se abraza a la justicia de cada caso, sin generalizar," Cruz v. Irizarry, supra,* página 661. De otro lado, el derecho a ocupar el hogar conyugal subsiste mientras existan las circunstancias que le dan las características de un hogar seguro y mientras la equidad ampare el derecho de los ocupantes.

Para ambas determinaciones, el juzgador de hechos deberá atender a las circunstancias particulares que cada caso presenta.

Con esto en mente, examinamos el remedio provisto por el tribunal de instancia *vis a vis* las circunstancias particulares del núcleo familiar compuesto por Mateo y sus dos hijos y entendemos que la decisión recurrida no satisface la equidad del caso.

La primacía que disfruta el interés del Estado en preservar el bienestar de los menores inclina la balanza a favor del reconocimiento del derecho a mantener su hogar seguro en la casa donde han residido desde su nacimiento. El remover de su entorno y comunidad a un niño pre-adolescente y a una joven de 16 años conllevaría un trastoque indeseable e innecesario a su ambiente. El hecho de poder permanecer en su hogar, por el contrario, promueve que los menores mantengan el estilo y nivel de vida que hubieran disfrutado si la familia hubiere permanecido intacta. ■

El interés propietario de Cintrón en su participación en la propiedad ganancial debe quedar relegado a un segundo plano por ahora. La posposición de la liquidación de este bien inmueble en nada perjudica la titularidad de Cintrón en la porción que le corresponde. Su título está seguro y con el tiempo meramente aumentará en valor.

Por otro lado, diferimos de la apreciación que de la prueba hizo el tribunal de instancia. Si bien es cierto que de la transcripción de evidencia surge que Mateo tiene cierta preparación secretarial y destreza en el teclado, eso no garantiza que en seis meses ella podrá conseguir una nueva vivienda para sus hijos. Lo que quedó demostrado por los testimonios vertidos en corte fue que actualmente el núcleo familiar compuesto por madre e hijos tiene una necesidad de vivienda, porque con los ingresos que genera en su empleo como operadora de *"beepers"* a tiempo parcial, Mateo no puede adquirir otra residencia. Los argumentos que levanta Cintrón en su Oposición y Réplica a Alegato Suplementario resultan altamente especulativos y no pueden sostener la decisión de remover al grupo familiar de su actual residencia cuando, precisamente, para circunstancias como ésta es que la jurisprudencia ha reconocido el derecho de los hijos menores y su padre o madre custodio a retener temporeramente la residencia conyugal como hogar seguro, en virtud de las medidas en equidad que la Ley 87, *supra*, permite tomar en casos de divorcio.

Aun cuando es cierto que como regla general los co-propietarios no tienen que permanecer en indivisión, ■ la regla halla excepción en la legislación de hogar seguro, según interpretada. En este caso, donde por mandato de ley el principio rector lo es la equidad, sería realmente injusto e innecesario decretar la ejecución de la propiedad para pagarle a Cintrón su porción ganancial, cuando de los autos surge que él tiene satisfechas sus necesidades de vivienda, recibe una pensión del Seguro Social e ingresos adicionales por hacer reparaciones a equipos electrónicos pequeños.

El tribunal de instancia hizo un esfuerzo por atemperar los efectos de su decisión de no acceder al reclamo de hogar seguro. No obstante, entendemos que la equidad requería declarar Con Lugar la Moción de Desestimación de Mateo. Cabe recordar que la vivienda es parte del derecho a alimentos que tienen los hijos con respecto a sus padres. El derecho a recibir alimentos, a su vez, es derivado del derecho constitucional a la vida misma. Consecuentemente, el Tribunal Supremo ha recalcado en reiteradas ocasiones que los alimentos y el bienestar general de los menores en Puerto Rico están revestidos del más alto interés público. ■

Por ello, y en el ejercicio de nuestro poder de *parens patriae*, REVOCAMOS la decisión del foro recurrido. De esta forma quedará bien servida la justicia.

### III

Por todos los fundamentos anteriormente expresados, este Tribunal REVOCA la Sentencia recurrida y DESESTIMA la acción de liquidación de gananciales en cuanto al referido bien inmueble.

No obstante y en vista de que la apelante Luz E. Mateo posee un potencial para generar ingresos mayores, la desestimación es SIN PERJUICIO de que posteriormente el apelado Alfredo Cintrón Arce pueda solicitar al Tribunal de Primera Instancia, la celebración de vista para demostrar que procede la liquidación por razón de haber mejorado las condiciones económicas a tal punto que la residencia conyugal haya cesado de constituir el hogar seguro para su ex-esposa e hijos. En esa vista, de ser celebrada, Mateo por su parte deberá demostrar al tribunal las gestiones realizadas para superar su actual necesidad de vivienda. La solicitud de vista no podrá ser presentada en un plazo menor de seis meses contados a partir de la notificación de esta Sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 174

**1.** Recientemente la Asamblea Legislativa incorporó la doctrina de *Cruz v. Irizarry, supra,* al Código Civil mediante la Ley Número 184 de 26 de diciembre de 1997. Esta añade el Artículo 109-A, que reconoce el derecho del padre o madre custodio a reclamar como hogar seguro la vivienda conyugal ganancial, mientras dure la minoría de edad, los estudios o la incapacidad de los hijos que quedaron bajo su custodia. Como la exposición de motivos de la Ley recalca, no procede el reconocimiento automático del hogar seguro, sino que el juzgador determinará lo que en justicia procede de acuerdo a las circunstancias particulares del caso.

La mención de esta Ley en la decisión que nos ocupa tiene propósito ilustrativo, ya que la misma fue aprobada con posterioridad a los hechos de este caso y no forma parte del estado de derecho para entonces vigente.

**2.** *Carrillo v. Santiago, supra,* página 547.

**3.** Véase, Torres Peralta, Sarah. *El Derecho de Alimentos en Puerto Rico,* Publicaciones STP, Inc. (1997), páginas 1.19-1.20.

**4.** Artículo 334 del Código Civil, 31 L.P.R.A. Sección 1279.

**5.** *Ex-Parte Negrón Rivera,* 120 D.P.R. 61 (1987); *López v. Rodríguez,* 121 D.P.R. 23 (1988) y *Guadalupe Viera v. Morell,* 115 D.P.R. 4 (1983).