Miguel García Irizarry, demandante y apelante, *v.* Ricardo Pérez Irizarry, demandado y apelado.

No. 5610.—*Sometido:* Diciembre 5, 1933. *Resuelto:* Enero 12, 1934.

*E. Báez García,* abogado del apelante; *José Sabater,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Miguel García Irizarry, dueño de tres parcelas de terreno, compradas durante su matrimonio con Juana Toro Vázquez a diferentes personas, alega que dichas parcelas, aunque no lindan entre sí, constituyen una sola finca y fueron adquiridas en unión de su esposa con su trabajo personal, haciendo economías, con el único objeto de dejar a su familia un hogar seguro donde pudiera albergarse, y que en una de estas parcelas, adquirida en 1910, edificó una casa en la cual vive con su familia. Las otras dos parcelas fueron adquiridas en 1914. Se alega en la demanda que el demandante no tiene ninguna otra propiedad, con excepción de estas tres parcelas, y que nunca ha renunciado el derecho de hogar seguro. El demandante Miguel García Irizarry fué demandado en la Corte Municipal de Mayagüez por Ricardo Pérez Irizarry, quien, obtenida sentencia a su favor, procedió a ejecutarla en las tres fincas pertenecientes al referido Miguel García. Solicitó éste de la corte que las referidas parcelas de terreno fuesen declaradas exentas de ejecución, por constituir su hogar seguro, y habiendo sido esta solicitud declarada sin lugar, las

parcelas de terreno se vendieron en pública subasta por el márshal al ahora demandado y entonces demandante Ricardo Pérez Irizarry por la cantidad de $100.

El demandado niega los hechos esenciales de la demanda y alega que Clemente Ramírez promovió una acción contra Miguel García y su esposa en cobro de dinero, y embargó las tres fincas rústicas que se describen en la demanda. Al verse demandado Miguel García, solicitó del ahora demandado Ricardo Pérez Irizarry, que le prestara fianza para poder levantar el embargo trabado por Clemente Ramírez sobre dichas tres fincas y el demandado, sin interés alguno ni lucro, y sólo para acomodar a dicho Miguel García, le prestó la fianza en dicho pleito. De este modo se levantó el embargo y se dejaron las fincas a la libre disposición del demandado en aquel pleito y demandante en el presente. Recayó sentencia definitivamente contra el demandado en el mencionado pleito, la cual fué confirmada en apelación por la Corte de Distrito de Mayagüez, y habiendo sido requerido el ahora demandado Ricardo Pérez como fiador para que hiciera efectiva la sentencia dictada definitivamente contra Miguel García, satisfizo, a instancias del mismo, el importe de la sentencia, y entonces el mencionado Miguel García, para garantizar el pago de dicha suma, vendió a su fiador, con pacto de retro, las tres parcelas de terreno que se reclaman ahora como hogar seguro, realizándose la venta de dichas tres fincas por la suma de $200. El entonces demandado Miguel García vendió además a su fiador, por la suma de $50, cinco cuerdas de cañas de su propiedad, obligándose dicho demandado a entregar en la próxima zafra dichas cañas hasta cubrir el importe de los $50. No cumplió Miguel García con lo convenido en este contrato, y el ahora demandado Ricardo Pérez Irizarry, luego de haber esperado dos años, demandó en cobro de pesos a García, y fallado el caso a su favor, obtuvo en ejecución de sentencia y por adjudicación en pública subasta, las tres parcelas de terreno que se describen en la demanda. Esta adjudicación se llevó a efecto en 6 de diciembre de 1928 y en ese

mismo día el demandado vendió a Pedro Toro Rodríguez las parcelas de terreno que le fueron adjudicadas.

Como defensa especial alega el demandado que en la acción promovida por él contra el demandante en esta acción en cobro de dinero, se presentó por dicho Miguel García una solicitud de hogar seguro reclamando la exención de embargo y ejecución de las tres fincas que se describen en la demanda, en cuya solicitud se hicieron sustancialmente las mismas alegaciones y se pidió lo mismo que se pide en la presente demanda. A dicha solicitud se opuso este demandado, y señalado día para juicio a instancias del abogado de dicho Miguel García y celebrada la vista de la solicitud presentada por este último, la corte, después de practicar la prueba, declaró sin lugar la referida solicitud de *homestead*. Alega el demandado que contra esta resolución no se ha establecido recurso alguno y que la misma ha causado estado entre las partes, no pudiendo el referido Miguel García volver sobre el mismo asunto por medio de la demanda presentada en este caso.

No conforme el demandado con la sentencia de la corte inferior declarando sin lugar la demanda, interpuso el presente recurso de apelación, en el cual atribuye a la corte inferior el único error de haber declarado que al levantar el demandado el embargo trabado por Clemente Ramírez en las tres fincas de Miguel García y pagar el importe de la sentencia y rescatar dichas fincas, realizó un acto equivalente a haberle facilitado el demandado al demandante el dinero para adquirir dicha finca, no pudiendo el demandante establecer la reclamación de hogar seguro contra dicho demandado.

■ La prueba documental presentada de común acuerdo por ambas partes demuestra que Clemente Ramírez, para asegurar la efectividad de la sentencia que pudiese recaer en el pleito incoado contra Miguel García Irizarry, embargó las tres parcelas de terreno mencionadas y además ciertas cañas sembradas por García en siete cuerdas de terreno que tenía arrendadas. El embargo fué levantado en cuanto a las cañas me-

diante una fianza de $200 prestada por Ricardo Pérez Irizarry y Anacleto González.

Ha quedado demostrado que el demandado Ricardo Pérez Irizarry satisfizo en 1924, a ruego de Miguel García, la suma de $250 para cubrir el importe de la sentencia dictada contra el último como demandado en el pleito promovido por Clemente Ramírez.

La corte inferior entiende que el dinero que facilitara Pérez Irizarry para satisfacer el importe de la sentencia, rescató las fincas que habían sido embargadas por el mencionado Clemente Ramírez. Es verdad que la sentencia, de no haber sido satisfecha, pudo ser ejecutada en los bienes de Miguel García; pero si éste tenía constituído su hogar seguro para esa época y pudo reclamarlo contra el demandante en aquella acción, no puede decirse que la cantidad pagada al acreedor por la sentencia salvara de ser ejecutada una propiedad que en realidad estaba exenta de ejecución. No parece que pueda establecerse la conclusión de que Miguel García renunció a su derecho de hogar seguro por el hecho de haber solicitado que Irizarry pagase el importe de la sentencia. La suma satisfecha por el demandado para cubrir el importe de la sentencia no puede considerarse como dinero facilitado para adquirir la finca, y por lo tanto la corte inferior incurrió en error al sostener esta conclusión.

Para sostener su alegación de hogar seguro declaró exclusivamente el propio demandante. La parte demandada no ofreció prueba alguna sobre este particular. Declara el demandante que la finca que vive se divide en tres parcelas, una de media cuerda, donde tiene su hogar, otra de una y otra de dos cuerdas; que estas dos últimas parcelas están separadas de su hogar a una distancia como de seis cuerdas una y como de doce metros la otra; que el demandado no ha salido a vivir nunca fuera de ese sitio, y que cuando fué demandado por Ricardo Pérez vivía en esa misma casa; que su familia depende de él para su sostenimiento y que lo que produce la finca es para el sostenimiento de la familia; que además de

su esposa y de su hija vive con él su mamá, que es una anciana que depende de él para su sostenimiento; que estas tres fincas están cerca una de otra, pero que no lindan entre sí; que él vive en la finca de media cuerda, donde hay una casa y que en la otra finquita vive un cuñado del declarante; que en la finquita que tiene el declarante ha sembrado yautía blanca, ñame, frutos menores, en la otra finquita gandules, batatas, calabazas, frutos menores, y en la de su yerno, café, aguacates . . . ; que esos frutos los sembró el declarante y los frutos menores los siembran ellos y le dan una parte de los mismos, siendo eso lo que le pagan su yerno y su cuñado; que tiene dos hijas, la casada, que con el yerno ocupa esta finquita, y la otra que vive con él.

██ Aceptado por ambas partes que las parcelas que se describen en la demanda y que sirven de base a la reclamación del demandante no son contiguas, tócanos ahora decidir, aunque esta cuestión no ha sido discutida por las partes, si el derecho de hogar seguro en Puerto Rico, de acuerdo con nuestra ley, puede o no abarcar parcelas de terreno separadas del solar donde radica la casa del reclamante.

Los estatutos de algunos estados autorizan la constitución del hogar seguro en más de una parcela de terreno. Los tribunales de estos estados han sostenido que no es necesario que las parcelas sean contiguas. Otras cortes mantienen el mismo criterio interpretando estatutos muy similares al nuestro. En la mayoría de los estados se ha sostenido que no es necesario que las parcelas de terreno sean contiguas para que pueda establecerse el hogar seguro, siempre que no excedan del valor fijado en la ley y se usen para fines de dicho hogar. En algunas jurisdicciones se sostiene, en oposición al criterio de la mayoría, que para constituir el hogar seguro las parcelas de terreno deben ser contiguas.

El estatuto de Alabama exime de ejecución el hogar seguro de cada residente del estado que no exceda de ciento sesenta acres de terreno ni tenga un valor mayor de $2,000, y sus anexos, ocupados por tal residente como dueño. Inter-

pretando este estatuto dice la Corte Suprema de Alabama en el caso de *Dicus* v. *Halls,* 83 Ala. 159, 3 So. 239:

". . . No existe otra restricción, excepto la que excluye a los residentes de una ciudad, pueblo o villa. Existe una disposición separada para los residentes de ciudades, pueblos y villas. Ésta es la primera vez que esta cuestión ha sido planteada ante nosotros. En Perkins v. Quigley, 62 Mo. 498, hablando de la ley allí en vigor, se dijo: 'Las únicas restricciones concernientes al hogar seguro en el estatuto se refieren a la cantidad y valor del terreno, y las parcelas de terreno que lo compongan no tienen que ser contiguas, con tal de que sean usadas en conexión las unas con las otras.' Así, en Buxton v. Dearborn, 46 N. H. 43, la regla fué que 'una pequeña parcela de terreno en la cual se corta heno para alimentar una vaca conservada en una casa donde vive una persona, puede ser estimada como una parte de su hogar, aunque el terreno esté separado de la casa y a una milla de distancia, siempre que la casa y el terreno unidos no excedan de $500 en valor y dicho terreno esté usado en conexión con la casa para alimentar la vaca.' (Citas.)

"El testimonio demuestra que el terreno en controversia está ocupado y cultivado en común con la parcela en la cual el apelante reside y que los dos lotes constituían un origen común de sostenimiento para la familia. Este testimonio no rebatido demuestra que era una parte del hogar seguro."

En el caso de *Renaker* v. *Smith,* 60 S.W. 406, la Corte de Apelaciones de Kentucky se expresó así:

"¿Impide el hecho de que la parcela mayor de terreno deje de lindar con la finca en que se hallaba enclavada la propiedad, que al apelante le sea adjudicada parte de la misma para constituir un hogar seguro por un valor que no exceda de $1,000? La fraseología del estatuto es como sigue: 'Estará exento de venta en ejecución de sentencia . . . . todo el terreno, incluyendo la residencia y anexos, perteneciente a deudores que de buena fe sean jefes de familia, con familia, vecinos del estado, cuyo valor no exceda de $1,000.' Al interpretar este estatuto en el caso de Nichols v. Sennett, 5 Ky. Law Rep. 199, esta Corte, por voz de su Juez Presidente Sr. Hargis, se expresó así: 'Esta fraseología no exige que todo el terreno esté en la misma parcela o finca ni declara que la casa estará enclavada en el terreno que esté exento; sino que provee que la casa y los anexos deberán pertenecer al deudor, y que estarán incluídos en la exención. No sabemos de razón alguna que autorice una interpretación

tal del estatuto que prive a un jefe de familia *bona fide* de su derecho de hogar seguro en una finca contigua o adyacente a la parcela en la cual está situada su casa de vivienda, siempre que todo el terreno, incluyendo la casa y los anexos, no excedan en valor de la suma de $1,000 y que el terreno sea capaz de ser usado continua y necesariamente como parte del hogar seguro mediante razonables esfuerzos por parte de las personas que reclaman dicho hogar seguro.' En dicho caso ambas parcelas de terreno eran necesarias para el uso del apelante como su hogar seguro, pero estaban separadas por una faja de terreno perteneciente a su madre. La prueba en este caso demuestra que el apelante ha usado y cultivado el terreno en cuestión para el sostenimiento de su familia desde la fecha de su adquisición; y somos de opinión que el hecho de que el mismo no lindara con la parcela en que está enclavada la casa, no le priva, según el estatuto, del derecho de que la diferencia en valor del terreno en que está situada la casa, sea completada con suficiente terreno de la parcela mayor para constituir un hogar seguro por un valor de $1,000.''

En el caso de *Haggard* v. *Haggard,* 233 S.W. 18, la Corte Suprema de Missouri, interpretando el estatuto de dicho estado, sostiene que no es necesario que los terrenos sean contiguos o físicamente conectados en tanto en cuanto se usan en conexión con la residencia del reclamante y sus anexos (*appurtenances*). El estatuto de Missouri dice que el hogar seguro consistirá de la residencia y sus anexos y el terreno usado en conexión con la misma.

De la opinión emitida por la corte en este caso copiamos lo siguiente:

''Es de notarse que este no exige que los terrenos sean contiguos o linden materialmente. Sólo requiere que sean usados en conexión con la casa de vivienda y sus anexos.

''Se verá que la Legislatura tuvo cuidado en evitar el uso de cualquier fraseología que denotara contigüidad. Su relación con el hogar seguro se hizo depender en todos los casos del uso a que se destinaran por el dueño las distintas porciones del terreno, y en el caso del hogar seguro rural fué necesario, para que razonablemente se cumpliera el fin legislativo, que predominara el uso. En la fraseología usada por la Legislatura no hay prueba de que el dueño del terreno deba, si desea obtener los beneficios de la ley, reunir sus terrenos al mismo lado del camino en que está situada

su residencia, o que no pueda hacer que parte del camino se interponga entre su residencia y la tierra que labra. Aquellos de nosotros que hemos nacido y vivido en el campo, estamos acostumbrados al espectáculo de ver al agricultor caminar a pie o a caballo con rumbo a su trabajo las distancias descritas por la prueba.

"El lenguaje que hemos usado estuvo directamente ante esta corte para su interpretación allá para el término de mayo de 1876 en Perkins v. Quigley, 62 Mo. 498. El juez Napton en su opinión dijo:

" 'La contigüidad no parece entrar en nuestra definición estatutaria. Un jefe o cabeza de familia puede, según nuestra ley, ser dueño de cuarenta acres de terreno en un sitio, y cultivar cuarenta más en otro sitio por sí mismo o con sus hijos, empleados o sirvientes. Con frecuencia sucede que una pradera depende de un bosque a varias millas de distancia, y ambos pueden constituir el hogar seguro; o que el dueño de una finca que está en una colina donde haya una fuente utilizable y maderas cultive una huerta en el valle que está totalmente separado del lugar donde resida por cualquier distancia imaginable que no haga que la una sea incapaz de ser usada en relación con la otra. Las únicas restricciones fijadas por la ley son el área del terreno y su valor. En total no puede exceder de 160 acres ni valer más de $1,500.' "

En el caso de *Farmer* v. *Hampton,* 164 Ky. 83, 156 S.W. 1041, se sostuvo que no importaba que una parcela de terreno reclamada como una parte del hogar seguro no fuese contigua al hogar del reclamante, o que el mismo no viviese en ella, si como una cuestión de hecho fué usada y cultivada en conexión con el hogar y no valía más de $1,000, que es la suma fijada por el estatuto.

En el caso de *Hastie* v. *Kelley,* 57 Vt. 293, la corte dijo:

"Nosotros creemos que bajo la ley de hogar seguro, tal y como está redactada en la actualidad y desde la compilación de 1863, la exención hasta la suma de $500 puede aplicarse en parte a una parcela de terreno separada del solar donde está enclavada la casa, cuando tal parcela se conserva por el jefe de familia como una parte del hogar seguro y se usa en conexión con el mismo, y cuando el lote con los edificios vale menos de $500."

La sección primera de nuestra ley sobre hogar seguro dice así:

"Que todo jefe de familia, que tenga familia, tendrá derecho a una finca de *homestead,* hasta el valor de quinientos dólares ($500) en una. estancia, plantación o predio de terreno y en los edificios contenidos en el mismo, que le pertenezca o que posea legalmente en virtud de arrendamiento o en otra forma y estuviere ocupado por él o ella como su residencia; y dicho *homestead* y todo derecho o título sobre el mismo estará exento de embargo, sentencia, exacción o ejecución, excepción hecha de las contribuciones que adeudare, el valor de la venta (compra) de dicha propiedad o responsabilidad incurrida por mejoras que se hicieren en la misma, y excepción hecha también de lo que más adelante se establece; *Disponiéndose,* que en caso de arrendamiento u otro contrato análogo nada de lo contenido en esta ley se interpretará en el sentido de que se prohiba al dueño o propietario de dicha estancia, plantación o predio de terreno, y de los edificios contenidos en el mismo, entrar de nuevo en posesión de dicha propiedad de acuerdo con lo estipulado en dicho contrato de arrendamiento o convenio, al faltarse al cumplimiento de las condiciones del mismo.''

La disposición que antecede puede ser susceptible de la misma interpretación que han recibido las leyes de los estados que se interpretan en las decisiones anteriormente citadas. No vemos que exista diferencia alguna entre dichas leyes y la nuestra en lo que respecta a la contigüidad del terreno que pueda servir de base para la constitución del hogar seguro. Dichas leyes se limitan a definir con más o menos precisión lo que constituye el *homestead* u hogar seguro, sin decir una palabra con respecto a contigüidad ni mencionar si el *homestead* puede establecerse en más de una parcela. Sin embargo, los tribunales han interpretado liberalmente estos estatutos, sin aceptar restricciones que pudieran dificultar la aplicación de la ley de acuerdo con sus fines y propósitos. Claro es que nos estamos refiriendo en estos comentarios a los estatutos que no han autorizado expresamente la constitución del hogar seguro en más de una parcela de terreno. Ya hemos dicho que en algunos estados la misma ley autoriza expresamente que el *homestead* pueda constituirse en diferentes parcelas de terreno.

Las decisiones que sostienen que la contigüidad es necesaria aducen también argumentos dignos de consideración, pero

teniendo en cuenta que los estatutos referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto al propósito de la ley, entendemos que debemos seguir la doctrina adoptada por la mayoría de los tribunales que no requiere la contigüidad del terreno para que pueda establecerse el derecho de hogar seguro.

En el presente caso el demandante cubre en su reclamación las tres parcelas de terreno que según declara constituyen una sola finca. Declara que su familia depende de él para su sostenimiento y que lo que produce la finca es para el sostenimiento de la familia. Las tres parcelas están muy cercas unas de otras y dos de ellas se cultivan por el demandante en unión de su cuñado y yerno, quienes le pagan con parte de los frutos de las mismas. Entendemos que la evidencia aportada demuestra claramente que el demandante ha constituído su hogar seguro en las tres parcelas de terreno que se describen en la demanda.

Hemos examinado la defensa especial establecida por el demandado donde parece interponerse la defensa de *res judicata,* y no vemos que esta alegación haya sido sostenida por la prueba que ha sido elevada a este tribunal y que aparece relacionada en la exposición del caso. Sabemos por la referida exposición que Ricardo Pérez Irizarry promovió una acción en cobro de pesos contra Miguel García Irizarry y que obtuvo sentencia contra el mismo. A raíz de relatar los hechos alegados por Ricardo Pérez en dicha acción y de hacer constar que se dictó sentencia a su favor, dice la exposición del caso lo siguiente:

"Luego de dictada la anterior sentencia el demandado, con fecha 23 de noviembre de 1928, radicó una moción solicitando que la corte declarase que las porciones anteriormente descritas, que se alegaba por el demandado constituían una sola finca por depender unas de otras, aun cuando no colindaban entre sí, fuesen consideradas como el hogar seguro del demandado, estando exentas de ejecución por ese motivo, a cuya moción se opuso el demandante Ricardo Pérez Irizarry, siendo declarada sin lugar tal solicitud por

la Corte Municipal de Mayagüez en resolución de 5 de diciembre de 1928."

El párrafo anteriormente copiado nos dice que se presentó una moción para que las parcelas de terreno del demandante fuesen declaradas exentas de ejecución por constituir su hogar seguro y que dicha moción fué declarada sin lugar por la Corte Municipal de Mayagüez. Asumiendo sin decidirlo que esta alegada defensa especial tenga el alcance que le atribuye el demandado, no sabemos si la cuestión planteada fué resuelta en su fondo o si la corte se limitó a desestimar la solicitud del demandante Miguel García Irizarry sin penetrar en los méritos de la misma.

*Debe revocarse la sentencia apelada y dictarse otra en su lugar declarando que el demandante tiene constituído su hogar seguro en las parcelas de terreno que se describen en la demanda y que estas tres parcelas están exentas de ejecución, sin especial condenación en costas.*