MARÍA MERCEDES VEGA ACOSTA, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FAUSTO RAMOS QUIRÓS, JUEZ, demandado; MIGUEL J. CASTAÑER FOLCH, interventor.

*Número:* C-63-47          *Resuelto:* 12 de noviembre de 1963

*Tomás Boneta Correa,* abogado de la peticionaria; *Francisco Acevedo,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La Sala de San Juan del Tribunal Superior disolvió el vínculo matrimonial entre el interventor Miguel J. Castañer Folch y la peticionaria María Mercedes Vega Acosta mediante sentencia de divorcio dictada en el caso Civil 62-1125 de dicha Sala, en que declaró a la peticionaria cónyuge inocente y le concedió la custodia legal y la patria potestad sobre una hija menor, de 12 años de edad, procreada en el matrimonio.

Poco después el interventor radicó en la misma Sala una demanda sobre División de Bienes Gananciales en la que, entre otros bienes gananciales, hizo constar que existía una casa con su solar sita en la Extensión San Agustín de Río Piedras. En una conferencia con antelación al juicio las partes concedieron de mutuo acuerdo un valor de $15,000 a dicha propiedad y se acordó que se efectuara una venta privada de la misma. Algún tiempo después el aquí interventor y allá demandante hizo una petición à la Sala sentenciadora pidiendo que se decretara la venta en pública subasta de la referida propiedad. Hizo constar que la misma estaba gravada con una hipoteca a favor del Administrador de los Asuntos de Veteranos en garantía de un préstamo de $9,900 a ser pagado en veinte años a razón de $60 mensuales, el primero de dichos pagos desde el primero de agosto de 1954, y que el balance de la hipoteca, al 13 de noviembre de 1962, ascendía a $6,478.82.

Solicitó que al efectuarse la venta en pública subasta se le permitiera al adquirente retener la referida cantidad o la que resultara a la fecha de la venta para en su día cubrir la hipoteca, y que la diferencia se dividiera entre las partes una vez descontados ciertos gastos de procedimiento.

La peticionaria radicó entonces una solicitud interesando la concesión y reconocimiento del derecho de hogar seguro e hizo constar que en 1954 el matrimonio había adquirido la referida casa y solar la cual habían ocupado en todo momento hasta que él abandonó el hogar; que ella la ocupaba al presente con su hija menor de edad quien vivía en su compañía; que la sentencia de divorcio había sido dictada a su favor y se le había concedido la custodia y patria potestad de la menor y que la propiedad envuelta le había sido fijada a ella y a su hija como su domicilio. Solicitó que de venderse la propiedad en pública subasta se le abonara la cantidad de $1,500 importe de su hogar seguro.

En 29 de marzo de 1963 la Sala sentenciadora dictó resolución en donde concluyó que la aquí peticionaria era el cónyuge inocente y tenía la custodia legal y la patria potestad sobre la menor procreada en el matrimonio; que dicha menor vivía en la casa y solar que se intentaba vender en pública subasta y que la utilizaba como su residencia desde la fecha de su adquisición; que ella tenía constituido su derecho de hogar seguro en la referida propiedad, y por consiguiente le concedió y reconoció dicho derecho en la cantidad de $1,500. Expresamente hizo constar que el Tribunal entendía que la equidad del presente caso requería para impartir cumplida justicia que le fuera concedido y reconocido a la peticionaria dicho derecho de hogar seguro. Ordenó por lo tanto que al venderse la propiedad se retuviera del precio obtenido la cantidad de $1,500 para ser entregado a la peticionaria, y el balance, después de pagadas las obligaciones y cargas, a ser dividido entre las partes.

El interventor solicitó la reconsideración de la anterior

solicitud para lo cual se señaló una vista. Después de celebrada la misma, la Sala sentenciadora, en 22 de abril de 1963, dictó otra resolución anulando la anterior, y denegó el derecho de la peticionaria a reclamar su hogar seguro por el fundamento de que ella había renunciado a dicho hogar seguro al constituirse la hipoteca a favor de la Administración de Veteranos. Para revisar esta segunda resolución expedimos *certiorari.*

En la vista del asunto declaró un funcionario de la Administración de Veteranos y leyó para el récord la cláusula pertinente de renuncia de hogar seguro en la escritura de hipoteca, la cual textualmente dice así: "Los deudores hipotecarios por la presente expresamente renuncian *a favor del acreedor hipotecario* sus derechos y propiedad de hogar seguro (homestead) sobre el inmueble hipotecado, por virtud de cualquier ley que se les concediere, en consideración a que el préstamo garantizado ha sido solicitado y utilizado por ellos para el pago del precio de adquisición del propio inmueble hipotecado." Demostró la prueba que la deuda hipotecaria estaba al día en sus pagos y que no se había ejecutado ni había pendiente procedimiento alguno de ejecución por parte de la Administración de Veteranos por razón de esta hipoteca.

Desde que se aprobó la Ley de Hogar Seguro de 12 de marzo de 1903 se dispuso que en casos de divorcio el Tribunal podía disponer del derecho de hogar seguro de acuerdo con la equidad del caso. Igual disposición se retuvo en la Ley de Hogar Seguro de 13 de mayo de 1936, Ley Núm. 87 de ese año, que suplantó la ley anterior. Dispuso la Ley Núm. 87 que el derecho de hogar seguro es irrenunciable, renuncia que se permitía bajo la ley de 1903, y que cualquier pacto en contrario es nulo. Se permitió, no obstante, que el derecho de hogar seguro pudiera renunciarse en los casos de hipotecas aseguradas por el Administrador Federal de Hogares o en casos de préstamos a veteranos asegurados por la Administración de Veteranos de los Estados Unidos. Por enmienda pos-

terior de 11 de febrero de 1955, se permitió la renuncia a favor de otras entidades ahí señaladas.

Dispone la Sec. 5 de la Ley Núm. 87, según quedó enmendada por la Núm. 1 de 11 de febrero de 1955, que no se hará venta alguna *por virtud de sentencia* o ejecución de una finca urbana o rústica, cuando se reclamare u ocupare la misma como hogar seguro, a menos que se obtuviere por ella una suma mayor de $1,500, y que de venderse por cantidad mayor de $1,500, esta cantidad será depositada sujeta a la reclamación de hogar seguro.

La Sala sentenciadora decretó en este caso de divorcio el derecho de hogar seguro a favor de la peticionaria, quien fue cónyuge inocente y quien usaba la propiedad como su hogar y el de su hija menor sobre quien le fue concedida la custodia y patria potestad. Cf. *Irizarry* v. *García*, 58 D.P.R. 280, 281 y ss. (1941). La peticionaria reclamó a su debido tiempo su derecho a hogar seguro. Cf. *Rivera* v. *Vázquez*, 45 D.P.R. 503 (1933), pág. 505; *Carrillo* v. *Santiago*, 51 D.P.R. 545 (1937); *Irizarry* v. *García*, ante, pág. 285. El hogar seguro se ha definido, no como un título adicional a la propiedad y sí como un interés en la propiedad. Cf. *González* v. *Corte Municipal*, 54 D.P.R. 18 (1938), pág. 20; *Federal Land Bank* v. *Corte Municipal*, 47 D.P.R. 942 (1935). Al insistir el interventor en que se vendiera la propiedad en pública subasta en virtud del pleito de división de gananciales, incuestionablemente la peticionaria tenía ese interés a ser protegido, y así lo reconoció la Sala primeramente.

No fue correcta, sin embargo, la posterior resolución negándole el derecho a hogar seguro, contra el interventor, por razón de la renuncia que se hizo del mismo en la escritura de hipoteca a favor de la Administración de Veteranos. Como se sabe, la Ley de Hogar Seguro de 1903 permitía que el derecho fuera renunciado siempre y cuando que se hiciera de manera expresa. En 1936 hubo un cambio radical de política pública en tal sentido y se declaró dicho derecho

irrenunciable excepto en los casos expresamente permitidos por ley, y todo pacto en ese sentido, nulo. Aparte de que el derecho de hogar seguro debe interpretarse liberalmente a favor de su reclamación, Cf. *García* v. *Pérez*, 46 D.P.R. 31 (1934), pág. 40, toda renuncia de tal derecho; por ser una excepción a la política pública en general a partir de 1936, debe interpretarse restrictivamente en contra de la renuncia.

En este caso la peticionaria renunció su derecho de hogar seguro *únicamente* a favor de la acreedora hipotecaria Administración de Veteranos. La Administración de Veteranos no ejecutó la propiedad ni estaba en trámites de ejecutarla. No sabemos si la Administración de Veteranos, que no se hizo parte ni se manifestó en el pleito, aceptaría o no que el adquirente, (que podría no ser un veterano) asumiera la deuda hipotecaria o si exigiría el pago total de inmediato con el producto de la venta. De todos modos, nada hay en los autos que demuestre acción alguna por la acreedora la Administración. El interventor no tenía base en derecho para reclamar en su beneficio la renuncia de un hogar seguro que la peticionaria hizo en favor de la Administración, como una de las excepciones de la Ley, y que no hubiera podido hacer válidamente a favor del interventor mismo, una vez tal derecho le fue adjudicado por la Sala de acuerdo con la Sec. 3 de la propia Ley de Hogar Seguro. El caso de *Smith* v. *Negrón*, 57 D.P.R. 83 (1940) y *Quiñones* v. *Rodríguez*, 58 D.P.R. 217 (1941), citados por el interventor, no son aplicables. En el de *Smith* se trataba de una acción del propio acreedor hipotecario a favor de quien se había renunciado el derecho cuando la ley permitía renunciarlo. El de *Quiñones* no tiene pertinencia al caso.

Distinto a la situación en *Carrillo* v. *Santiago* y en *Irizarry* v. *García*, ante, la peticionaria no ha insistido en retener la propiedad para ocuparla con la menor hasta la mayoridad de ésta. Ella solo reclama el derecho de hogar seguro en la

cantidad de $1,500 de cualquier venta que disponga el Tribunal. ([1])

*Se anulará la resolución de la Sala sentenciadora de 22 de abril de 1963 que dejó sin efecto la anterior de 29 de marzo reconociendo y concediendo a la peticionaria el derecho de hogar seguro. Se devolverán los autos a la Sala de instancia para los procedimientos ulteriores que 'procedan que deberán ser compatibles con lo aquí resuelto.*

---

([1]) De acuerdo con el expediente de divorcio, la situación en cuanto a alimentos según resolución de 8 de octubre de 1962, vigente al dictarse el fallo que revisamos, demuestra que a la peticionaria se le impuso la obligación de satisfacer los plazos de la hipoteca en la cantidad de $62 y al interventor a pasarle a su hija $85 mensuales de los cuales $15 son para amortizar la deuda. De venderse la propiedad, la cuestión de alimentos puede ser siempre objeto de nueva evaluación si el alquiler de cualquier otra vivienda que ocupare la menor excediere de $62 ó por cualquier otra circunstancia pertinente.