EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Santos A. Candelario Vargas<br><br>Peticionario<br><br>v.<br><br>Madeline Muñiz Díaz<br><br>Recurrida | Certiorari<br><br>2007 TSPR 117<br><br>171 DPR \_\_\_\_ |

Número del Caso: CC-2006-214

Fecha: 7 de junio de 2007

Tribunal de Apelaciones:

>    Región Judicial de Ponce (Panel X)

Juez Ponente:

>    Hon. Zaida Hernández Torres

Abogado de la Parte Peticionaria:

>    Lcdo. Félix L. Negrón Martínez

Abogado de la Parte Recurrida:

>    Lcdo. Efraín Díaz Carrasquillo

Materia: Desahucio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Santos A. Candelario Vargas

    Peticionario

       v.

                           CC-2006-214

Madeline Muñiz Díaz

    Recurrida

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 7 de junio de 2007

La controversia medular que tenemos que atender en el presente caso gira en torno al alcance del derecho a hogar seguro; específicamente, si el mismo se puede reclamar sobre una propiedad privativa del padre de la menor para cuyo beneficio se ha solicitado.

## I

La señora Madeline Muñiz Díaz y el señor Santos A. Candelario Vargas sostuvieron una relación consensual desde el año 1998 hasta el 2004, fruto de la cual nació una niña, la menor EMCM, en el año 2000. Durante su concubinato, las partes vivieron en una propiedad inmueble de dos niveles ubicada en

Juana Díaz, Puerto Rico. Vigente la relación, el señor Candelario Vargas adquirió el referido inmueble mediante la compra de las particiones hereditarias de sus hermanos. Concluida la relación entre las partes, la señora Muñiz Díaz y la menor se instalaron en el segundo nivel del inmueble. La primera planta está alquilada a un tercero por el canon de $450, según nos informa el peticionario.

Así las cosas, el 10 de febrero de 2004, el señor Candelario instó una demanda de desahucio en contra de la señora Muñiz. En la misma, alegó que ésta se negaba a desalojar el inmueble objeto de esta controversia. Explicó, que la propiedad era un bien privativo por lo que su ex compañera no tenía ningún derecho a permanecer allí. Por su parte, la señora Muñiz presentó su contestación a la demanda en la que reclamó el uso de la propiedad como hogar seguro de la menor y en reconvención solicitó la división de la comunidad de bienes.

Luego de varios trámites procesales, las partes estipularon que la demandada desistía de la reconvención sobre la comunidad de bienes que existió entre ellos. A cambio, el demandante le entregaría la cantidad de trescientos ($300) dólares por cualquier derecho que pudiese tener la demandada la referida comunidad. Además, la demandada reconoció que el bien en controversia era privativo del demandante.

Luego de celebrar la vista en sus méritos, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la

demanda de desahucio y sin lugar la reconvención. Explicó, que al ser el bien uno privativo, la demandada no tenía ningún derecho a reclamar hogar seguro. Como parte de sus conclusiones de hecho determinó que el demandante pagaba la hipoteca del inmueble y además, pagaba una pensión alimenticia de trescientos cincuenta ($350) dólares a favor de su hija. Determinó además, que no existía ningún contrato de arrendamiento entre las partes y que la demandada no pagaba ninguna mensualidad en concepto de renta. El tribunal concluyó que la señora Muñiz recibía un sueldo neto de mil setenta y ocho ($1,078) dólares, que pagaba dos préstamos y que estaba acogida al capítulo trece (13) de quiebra federal, por lo que pagaba doscientos cincuenta ($250) dórales mensuales.

Inconforme, la señora Muñiz acudió al Tribunal de Apelaciones, impugnando la determinación del Tribunal de Primera Instancia de no reconoce el derecho de hogar seguro sobre la propiedad privativa del padre de la menor.[1] Mediante sentencia emitida el 24 de enero de 2006, el foro apelativo intermedio revocó al foro primario y declaró la residencia objeto del presente litigio hogar seguro de la menor. Explicó, que el hecho de que el inmueble en controversia fuera un bien privativo del padre no afectaba el derecho a hogar seguro de la niña. Sostuvo que éste no es un

_____

[1] Alegó además, que erró el Tribunal de Primera Instancia al celebrar la vista en su fondo a pesar que la demandada no tuvo la oportunidad de cotejar la deposición que le fuese tomada, como lo dispone la Regla 27.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 27.7.

título adicional al de propiedad, por lo que no se afectaba el derecho de propiedad del demandante sobre el inmueble. Añadió, que el derecho a hogar seguro de los menores emana de la obligación que tienen los padres de alimentar a sus hijos, obligación revestida del mas alto interés público.

Tras una moción de reconsideración y su correspondiente réplica, el Tribunal de Apelaciones emitió una sentencia enmendada en la que reiteró su determinación original. En desacuerdo con dicha determinación, el señor Candelario acudió ante este Tribunal mediante un recurso de *certiorari* en el que alegó, en lo pertinente, que había errado el foro apelativo al extender el derecho de hogar seguro a un bien de carácter privativo.

El 12 de mayo de 2006, expedimos el auto solicitado. Las partes han comparecido y contando con el beneficio de sus alegatos pasamos a resolver.

## II

La figura del hogar seguro pasó a formar parte de nuestro ordenamiento legal poco después del cambio de soberanía, mediante la aprobación de la Ley del 12 de mayo de 1903, conocida como *Ley para definir el "homestead" (hogar seguro) y para exentarlo de una venta forzosa*. Luego, dicha ley fue incorporada por la comisión codificadora al Código Civil como los Arts. 541-542; ello, mediante enmienda a la disposición final del Código Civil. Véase, Ley Núm. 48 de 28 de abril de 1930. La ley de hogar seguro del 1903 proviene de la ley de hogar seguro de Illinois. Muñoz Morales,

Apuntes sobre el derecho de homestead, 4 *Rev. Jur. U.P.R.* 78, 88 (1934).

Posteriormente, la Ley Núm. 87 del 13 de mayo de 1936, ("Ley Núm. 87" o "Ley de Hogar Seguro") derogó la ley de 1903, aun cuando no hizo mención del Código Civil. La Núm. 87 aparece codificada en las secciones 1851-1857 del Código Civil. 31 L.P.R.A. secs. 1851-1857. Recientemente, las disposiciones sobre hogar seguro sufrieron enmiendas a los efectos de aumentar la cuantía del hogar seguro. Ley Núm. 116 del 2 de mayo de 2003. Véase, *Rodríguez Ramos v. Pérez Santiago*, res. 14 de abril de 2004, 161 D.P.R. ___, 2004 T.S.P.R. 57.

Este tipo de legislación se diseñó principalmente --tanto aquí como en los Estados Unidos-- para aislar el hogar familiar de los acreedores del deudor, así como para prohibir la enajenación del mismo por su propietario sin el consentimiento de su cónyuge. Haskins, Homestead Exemptions, 63 *Harv. L. Rev.* 1288 (1950) ("[The] homestead laws, [were] designed to protect the family home from the reach of certain classes of creditors and to prevent alienation by the owner without the consent of his spouse.") Ello así aun en perjuicio de los válidos reclamos de un acreedor. *Riggs v. Sterling*, 27 N.W. 705, 708 (Mich. 1886) Véase también, Morantz, There's no Place Like Home: Homestead Exemption and Judicial Constructions of Family in Nineteenth Century America, 24 *Law & Hist. Rev.* 245 (2006). Sus orígenes se pueden rastrear a ciertos periodos de inestabilidad

financiera durante el Siglo XIX.  Note, State Homestead Exemption Laws, 46 *Yale L.J.* 1023, 1031 (1937).  Véase también, *Kleinert. V. Lefkowitz*, 259 N.W. 871, 872-873 (Mich. 1935).  En tal sentido, el profesor Muñoz Morales, *ibíd.*, pág. 78, nos indica que el "homestead" es "una institución de origen Norte-Americano nacida con el propósito de estimular la adquisición y conservación de propiedad y evitar el completo desamparo de la familia."

Para algunos, el propósito principal de estos estatutos era proveer seguridad y estabilidad a la familia del deudor evitando que el hogar familiar pudiera ser ejecutado en cobro de una deuda.  *Wuicich v. Solomon-Wickersham Co.*, 157 P. 972, 973 (Ariz. 1916).  ("Homestead statutes are enacted as a matter of public policy and in the interest of humanity.  One of the objects is that everything shall not be taken from the family, and it left in a state of penury and pauperism, and its members perhaps a public charge.")  Mientras que para otros, el propósito principal era proteger al hombre terrateniente del infortunio económico en que podía sucumbir. Así, la jurisprudencia de esta época es un reflejo de las actitudes de la sociedad del Siglo XIX sobre la tenencia de la tierra, los roles del hombre y la mujer en la familia y los problemas de la dependencia económica.  Véase, Morantz, *ibíd.*

Con ello de trasfondo, abordemos el tema que nos ocupa.

**III**

Como indicamos, se cuestiona en este caso el derecho de la demandada a reclamar para su hija como hogar seguro el inmueble propiedad de su compañero consensual, con quien convivió poco más de cinco años y quien es el padre de la menor.  Este inmueble fue donde el grupo familiar tenía instalada su residencia conjunta, permanente y habitual, por lo que constituía el centro de la vida en común.  Es decir, era su vivienda familiar habitual hasta que finalizó la relación afectiva de la pareja.

Como sabemos, la Ley Núm. 87, según enmendada, provee a todo jefe de familia el derecho a poseer y disfrutar de una finca, que le pertenezca o posea legalmente, en concepto de hogar seguro.  Dicha finca estará exenta de venta por virtud de una sentencia o ejecución, a menos que se obtenga por ella una suma mayor de quince mil ($15,000) dólares.  En caso de venta, la suma de quince mil ($15,000) dólares le corresponde al jefe de familia, una vez establezca su derecho a hogar seguro y el exceso de dicha suma se pagará al acreedor.  31 L.P.R.A. sec. 851.

La sección 2 de la Ley de Hogar Seguro dispone en lo pertinente que el hogar seguro, "y todo derecho o título sobre el mismo estará exento de embargo, sentencia, exacción o ejecución."  De otra parte, la sección siguiente establece que en caso de divorcio, "el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso."  31 L.P.R.A. sec. 1853.

Utilizando como norte el principio de equidad establecido en la sección 3 antes transcrita, nuestras decisiones han adjudicado el derecho a hogar seguro sobre la vivienda conyugal al ex-cónyuge que retenía la custodia de los hijos. Véase, *Carrillo v. Santiago*, 51 D.P.R. 545 (1937); *Vega Acosta v. Tribunal Superior*, 89 D.P.R. 408 (1963); *Cruz Cruz v. Irizarry Tirado*, 107 D.P.R. 655 (1978). No hay duda que el hilo conductor en estas decisiones fue la protección a la familia y los menores, impartiéndole al derecho de hogar seguro una interpretación liberal y expansiva. *García v. Pérez*, 46 D.P.R. 31 (1934). De esta forma nuestra jurisprudencia avaló la corriente doctrinal que preciaba la familia como el bien tutelado en las leyes referentes al hogar seguro. En *Federal Land Bank v. Corte Municipal*, 47 D.P.R. 942, 945 (1935) indicamos sin ambages, que "[l]a base fundamental del derecho a hogar seguro es la protección de la familia . . . ."

Lo cierto es que la vivienda familiar es un patrimonio que, prescindiendo de su titular, se encuentra al servicio de la familia como colectivo. En tal rigor, la vivienda familiar es "como una especie de propiedad familiar que trasciende a los propios cónyuges." A. Juanes Peces, J. L. Galván Aras, La naturaleza jurídica de la atribución de la vivienda familiar en los casos de crisis matrimonial, *La Ley*, núm. 3, 1992, 969, 970. En otras palabras, es un bien de goce colectivo, al servicio de la familia independientemente del origen o titularidad del inmueble. De ahí, que la figura

de hogar seguro al garantizar la adscripción del inmueble/residencia habitual al padre custodio, lo hace en función del beneficio que representa para la familia. Lo que es consecuencia obligada del principio ampliamente recogido en nuestro Derecho positivo y nuestra jurisprudencia, de protección de los mejores intereses de los hijos.

Acorde con lo anterior, en *Carrillo v. Santiago*, *supra,* concluimos que en caso de divorcio, el padre que retiene la custodia de los hijos conserva la característica de jefe de familia, por lo que le cobija el derecho a hogar seguro contenido en la ley de 12 de mayo de 1903. Resolvimos que en esos casos, el jefe de familia retendrá el derecho a hogar seguro sobre la propiedad que constituya la vivienda familiar, sin perjuicio de que el otro ex-cónyuge pueda reclamar la mitad de dicha propiedad cuando por cualquier causa cese el referido derecho. De esta forma salvaguardamos el bienestar de los menores sin afectar el interés propietario de los ex-cónyuges. Véase además, *López Rudón v. López*, 48 D.P.R. 324 (1936).

Por otro lado, en *Cruz Cruz v. Irizarry Tirado, supra,* señalamos la pauta a seguir al momento de adjudicar el hogar seguro. Allí indicamos:

> La preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Su reclamación de gananciales en la vivienda que aloja a esta familia quedará paralizada por el tiempo que subsistan las circunstancias que le dan calidad de hogar seguro y mientras la recta razón de equidad ampare el derecho de sus ocupantes. Hemos reconocido que el derecho de dominio no es

atribución absoluta de su titular y que está supeditado a intereses sociales de orden superior, significativamente la protección de la vivienda.

*Cruz Cruz v. Irizarry Tirado, supra,* págs. 660-661. Añadimos, que el límite monetario señalado en la legislación sobre hogar seguro no restringe el valor del hogar que en caso de divorcio se conceda a uno de los cónyuges, pues constituye una autorización del tribunal para el uso del inmueble en satisfacción de una legítima necesidad de la familia.

Como es de ver, nuestra jurisprudencia sobre este tema revela una marcada tendencia a proteger la vivienda familiar evitando su desmembramiento y conservando su uso, atribuyéndoselo a la parte que tenga la custodia de los hijos como medida de carácter proteccionista. Se desprende de nuestras expresiones que el bienestar de los hijos es un interés de mayor jerarquía que cualquier interés propietario que puedan tener los padres. Hemos reconocido también que como el derecho a hogar seguro se configura como una limitación al ejercicio del derecho que pueda ostentar uno de los padres sobre la vivienda familiar, cuando las circunstancias que motivaron la atribución original cesan, la atribución del uso puede cesar. *Cruz Cruz v. Irizarry Tirado, supra.* Véase, M. D. Cervilla Garzón, *La atribución del uso de la vivienda familiar al cónyuge no titular*, Marcial Pons, Madrid, 2005.[2]

---

[2] La doctrina española al analizar el contenido y alcance de los Arts. 96 y 1320 del Código civil español, discute ampliamente sobre la naturaleza jurídica del derecho que se

En el 1997, la Asamblea Legislativa recogió en legislación la norma que establecimos en *Cruz Cruz v. Irizarry Tirado* así como los principios antes enunciados. Véase, Ley Núm. 184 de 26 de diciembre de 1997. Dicha ley enmendó el Código Civil para añadir el Artículo 109-A, 31 L.P.R.A. sec. 385a, el cual dispone lo siguiente:

> El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta veinticinco (25) años de edad, tendrá derecho a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio.

---

le reconoce a quien se le atribuye la vivienda familiar. Un breve repaso de esa discusión doctrinal evidencia la falta de unanimidad de criterio sobre el particular. Rams Albesa, sugiere que en estos supuestos se configura un derecho real de uso. J. Rams Albesa, R. Moreno Flórez, *Comentarios al Código Civil, II,* Editorial Bosch, Barcelona, vol. 2, 2000, págs. 1015-1016. Roca Trías habla de posesión compartida que pasa a ser exclusiva, sin que exista creación ninguna de derecho real o de crédito. E. Roca Trías, en la obra colectiva, *Comentarios a la reforma del Derecho de Familia*, Ed. Tecnos, Madrid, 1984, vol. I, págs. 606-608. O'Callaghan sugiere que el beneficiado con la atribución se le constituye un derecho de ocupación con un poder inmediato y absoluto sobre la cosa. X. O'Callaghan Muñoz, El derecho de ocupación de la vivienda familiar en las crisis matrimoniales, *AC*, núm. 19/86, pág. 1329. Méndez Pérez, considera que lo que se constituye es un derecho real de habitación. Méndez Pérez, La atribución judicial de la vivienda a uno de los cónyuges en los proceso de nulidad, separación o divorcio, 1987 *Rev. Gen. Der*. 6287. Para García Mouriño y Del Carpio Fiestas, el mismo es de naturaleza exclusiva personal. García, Del Carpio Fiestas, Atribución del uso de vivienda familiar y *actio communi dividundo*, *AC* 1994I, 75 y ss. O, como reconoce sabiamente la profesora Cervilla Garzón, en *La atribución del uso de la vivienda familiar al cónyuge no titular*, Marcial Pons, Madrid, 2005, pág. 42, dada la naturaleza híbrida o *sui generis*, "participan de rasgos pertenecientes a uno y otro tipo, lo que impiden ser definidos de una forma con exclusión de la otra."

La propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose que el derecho de hogar seguro pueda reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. **Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación.**

El cónyuge que reclama el derecho a hogar seguro podrá retener todos aquellos bienes de uso ordinario en la vivienda.

Cuando se reclame el derecho de hogar seguro luego de decretado el divorcio, el mismo podrá ser concedido por el Tribunal que conoció del divorcio. (Énfasis nuestro.)

El propósito principal de esta legislación, según se desprende de su historial legislativo fue precisamente "hacerle justicia a la institución de la familia." Exposición de Motivos de la Ley Núm. 184 de 22 de diciembre de 1997. Véase además, *Rodríguez Ramos v. Pérez Santiago, supra*. Se trata de salvaguardar el bienestar de los hijos cuando por razón de la separación de sus padres se encuentran en una situación de inestabilidad respecto a su vivienda. *Véase*, Senado de Puerto Rico, *Diario de Sesiones, Procedimientos y Debates de la Decimotercera Asamblea Legislativa, Segunda Sesión Ordinaria* (1997), pág. 6854; Oficina de Asuntos de la Juventud, Oficina del Gobernador, *Ponencia sobre el Proyecto del Senado Núm. 194,* 14 de marzo de 1997. No hay por que disgregar a los hijos del entorno que han conocido desde siempre. El interés propietario del padre tiene que tomar un segundo plano frente a lo que es el mejor bienestar de sus hijos. De ahí, que el artículo

aprobado no incluya límites de valor monetario al derecho de hogar seguro.

En *Rodríguez Ramos v. Pérez Santiago*, *supra,* nos enfrentamos a una controversia donde se cuestionaba si el hecho que el Art. 109-A hablara de la "propiedad ganancial que constituye el hogar seguro", impedía que se reclamase como tal una propiedad que pertenecía en comunidad de bienes a los padres de la menor, habida cuenta que habían adquirido dicha propiedad antes de contraer matrimonio. Contestamos la interrogante en la negativa. Indicamos que independientemente del texto del Art. 109-A, existía en nuestro ordenamiento amplia jurisprudencia bajo la Ley de Hogar Seguro y su mandato de equidad que no podíamos soslayar, y cuya vitalidad permanecía incólume independientemente de la aprobación del Art. 109-A. Indicamos entonces, que "[n]o hay duda que las razones en equidad y de política pública que este Tribunal ha desarrollado sobre el tema del hogar seguro continúan vigente y pueden por lo tanto, aplicarse al caso de autos." *Rodríguez Ramos v. Pérez Santiago, supra.*

Tomando en cuenta la equidad y la política pública que procura el beneficio del menor, el *favor filii*, concluimos que el derecho a hogar seguro se extiende a la vivienda familiar aun cuando la misma no constituya un bien de carácter ganancial, sino un bien común entre ex-cónyuges.[3]

---

[3] En *Irizarry Quiles v. García Sanabria*, 58 D.P.R. 280 (1941), resolvimos que el padre custodio de los hijos podía

En atención a la primacía de estos valores nos negamos a aplicar mecánicamente el lenguaje expreso del Art. 109-A. Adviértase que el propio texto del Art. 109-A, luego de establecer cómo se dispone del hogar seguro, le ordena al juzgador a "determinar lo que en justicia proceda de acuerdo a las circunstancias particulares de cada caso." 31 L.P.R.A. sec. 385-A. Con este enunciado, el legislador autorizó al juzgador a atemperar el rigor de lo estatuido cuando la justicia así lo requiera. *Rodríguez Ramos v. Pérez Santiago, supra.*

Hoy nos corresponde continuar nuestra construcción dogmática sobre esta materia. Debemos atender en esta ocasión la controversia de si el derecho a hogar seguro se extiende también a la vivienda familiar habitual cuando ésta constituye un bien privativo del padre no custodio. Conforme nuestra trayectoria doctrinal y el claro mandato del propio Art. 109-A de procurar siempre la solución justa, la respuesta a la interrogante planteada tiene que ser en la afirmativa. Son varias las razones que nos llevan a así concluir. Comenzamos señalando que al plantearnos esta controversia lo hacemos conscientes "que los estatutos referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto al propósito de la ley." *García v. Pérez, supra*, pág. 35.

Como primer criterio decisorio somos de opinión que las mismas consideraciones de equidad y política pública que han

---

reclamar del derecho a hogar seguro, aun cuando la propiedad estuviera a nombre de los hijos.

permeado por décadas nuestra jurisprudencia sobre el derecho

a reclamar el hogar seguro aplican con igual rigor en este

caso. Consideraciones que resumimos en *Rodríguez Ramos v.*

*Pérez Santiago, supra*, de la siguiente manera:

> No existe argumento jurídico alguno que nos persuada a no reconocer el derecho a hogar seguro en el caso ante nuestra consideración. Al contrario, la equidad que gobierna el presente caso haya amplia base en nuestro ordenamiento para reconocer la propiedad aquí en controversia como hogar seguro de esta jefe de familia. El hecho de que . . . el reconocimiento del hogar seguro no afecta la titularidad; que la propiedad se utilizó como el hogar conyugal; que es la única propiedad que la menor ha reconocido; y que el derecho a dominio está supeditado a los intereses sociales de proteger a los menores, a la familia, y al hogar donde éstos residen.

Tomamos en consideración también, que en este caso la

vivienda reclamada como hogar seguro había sido la vivienda

familiar de las partes por un periodo de tiempo considerable.

Adviértase además, que estamos frente a un derecho

estrictamente de naturaleza familiar con lo cual, al atribuir

la vivienda familiar al padre custodio no titular del

inmueble, en beneficio de su hija, buscamos "el mantenimiento

de las mismas condiciones familiares existentes antes de la

ruptura . . . [lo que] **constituye una forma de contribución a**

**las cargas generadas con la  separación o el divorcio que hay**

**que afrontar . . . ."** E. Roca Trías, en la obra colectiva,

*Comentarios a la reforma del Derecho de Familia*, Ed. Tecnos,

Madrid, 1984, vol. I, págs. 606-608. El derecho a hogar

seguro tiene por lo tanto una íntima conexión con el derecho

de alimento de los padres a los hijos. Cervilla Garzón, *op.*

*cit.*, pág. 163. Pues como sabemos, corresponde a los padres

el deber de alimentar a los hijos y entre los alimentos debe comprenderse la habitación. 31 L.P.R.A. sec. 561. Certeramente señala la profesora Roca Trías, lo siguiente:

> Por lo tanto creo que es lo mismo contribuir al pago de los gastos que ocasione el alquiler o compra de una nueva vivienda que atribuir a los hijos y al cónyuge a cuyo cuidado queden el uso de la vivienda conyugal.

Roca Trías, *op. cit*., pág. 608. Véase además, Artículos 143 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 562 y 601.

Es procedente reconocer que la concesión de la vivienda familiar a los hijos menores enraíza con la obligación de alimentos del padre para con sus hijos. Obligación cuyo "fundamento medular . . . es la relación paterno-filial", es decir, garantizar las necesidades básicas de la vida de quien no puede cubrirlas por sí mismo. *Argüello v. Argüello*, 155 D.P.R. 62, 70 (2001). Como bien expresáramos en *Cruz Cruz v. Irizarry Tirado, supra,* pág. 661-662, al reconocer el derecho a hogar seguro frente una reclamación de división de bienes gananciales, "queda vindicada la fundamental obligación legal y moral del padre … de proveer albergue a su familia inmediata." No hay duda entonces, tal y como señala la profesora Roca Trías, que con la atribución de la vivienda familiar al padre custodio no titular del inmueble, lo que hacemos es reconocer una forma de contribución a la obligación de satisfacer alimentos que como resultado de la separación de la pareja le corresponde al padre alimentista.

Recordemos también lo que ya hemos resuelto con anterioridad, que "el deber de alimentar, educar y criar a los hijos menores es como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento." *Chévere v. Levis*, 150 D.P.R. 525, 539 (2000). Por lo tanto, el hecho de que haya o no existido un matrimonio entre los padres de la menor es irrelevante al momento de determinar el alcance de la obligación que tendrá el padre alimentista de alimentar a su prole y el derecho del padre no custodio de reclamar a favor de su hija la vivienda familiar como hogar seguro.

En conclusión, el derecho a hogar seguro reconocido en el Artículo 109-A del Código Civil de Puerto Rico, no depende del interés propietario que pueda tener sobre el bien el jefe de familia, pues éste es un mecanismo de protección a la unidad familiar y de lo que ha sido el centro de la vida en común.[4] Además, ¿cómo mejor aplicar el mandato de justicia provisto en el artículo, que evitando que la menor sea desarraigada de su entorno y del único hogar que ha conocido en su corta vida?

---

[4] Por contra, en *Quiñones v. Reyes*, 72 D.P.R. 304, 308, (1951), resolvimos que cuando la propiedad constituye un bien privativo de uno de los ex-cónyuges, el otro, aunque retenga la custodia de los hijos, no tiene derecho a reclamar hogar seguro. Esta limitada interpretación del derecho a hogar seguro es incompatible con lo que aquí resolvemos, con lo cual lo allí dispuesto ha perdido ya eficacia y queda revocado por la decisión que hoy anunciamos.

Adviértase además que en este caso las partes poseían en forma compartida la vivienda familiar por varios años, ahora se pasa a una posesión exclusiva sobre la misma. Lo que sucede, evidentemente, porque las necesidades familiares ameritan una protección prioritaria frente a las titularidades protegibles en virtud del derecho de propiedad. Es importante reiterar aquí que "al adjudicar controversias relacionadas con menores los tribunales deben guiarse por el principio de asegurar el bienestar y los mejores intereses de éstos. … [L]os derechos de los padres pueden limitarse en aras de proteger un interés apremiante del Estado, como lo es bienestar de los menores." *Rexach v. Ramírez Vélez*, res. 15 de junio de 2004, 161 D.P.R. ___, 2004 T.S.P.R. 97; *Ferrer v. González*, res. 15 de junio de 2004, 161 D.P.R. ___, 2004 T.S.P.R. 98, *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 71-72 (1987). Una vez atribuida la vivienda familiar al padre custodio en favor de los hijos en común, la atribución se torna en sí en una forma de contribuir a las cargas de manutención de esos menores y como tal se debe tratar.

Pasemos entonces a aplicar lo aquí discutido a los hechos particulares traídos ante nuestra atención.

**IV**

En el caso de autos, la señora Muñoz reclamó a favor de su hija menor el derecho de ésta a valerse de lo que ha sido la residencia habitual familiar por varios años como hogar seguro, aun cuando esta propiedad constituya un bien

privativo de su padre. Por los fundamentos discutidos anteriormente concluimos que le asiste la razón.

Como indicamos y recalcamos otra vez, el deber que tienen los padres de alimentar a sus hijos incluye el deber de proveerles para su habitación por lo que el hogar seguro se configura precisamente como una forma de contribución a esa carga. El interés propietario que puedan tener los padres sobre la vivienda familiar habitual que se reclama como hogar seguro no es un factor **determinante** al momento de decidir si procede o no una petición de hogar seguro. Como tampoco es relevante el hecho de que haya o no existido un matrimonio entre los padres de la menor para determinar si a la menor le cobija este derecho pues como ya hemos señalado, la obligación de alimentar a los hijos no está supeditada a la preexistencia de una relación matrimonial. La finalidad de la norma que anunciamos es atender las necesidades prioritarias del menor como lo es la habitación, así como la necesidad sentimental de continuar ocupando la vivienda familiar, lo que conlleva continuar residiendo en lo que ha sido el entorno social y afectivo de la menor (colegio, amigos, vecinos).

Sin embargo, el reconocimiento del derecho a hogar seguro no es automático, se basa en los preceptos de equidad vislumbrados según las circunstancias de cada caso y debe satisfacer una necesidad legítima. *Cruz Cruz v. Irizarry Tirado, supra,* pág. 661. Hemos indicado con atino que el derecho a hogar seguro "no afecta la titularidad, ni es un

título adicional de propiedad", ya que lo que cambia es el uso de la propiedad y no su título. *Rodríguez Ramos v. Pérez, supra; Vega Acosta v. Tribunal Superior, supra.*

Lo cierto es que el padre titular sufre, en efecto, una limitación de derecho temporal encaminada por supuesto, a proteger la continuidad de la convivencia familiar en beneficio de sus hijos. Ahora bien, ese uso de la vivienda tiene, evidentemente, un valor susceptible de cuantificación económica y viene a integrar, en cierto modo, una prestación *in natura*, lo que a nuestro juicio exige que sea tenida en cuenta para calcular el importe de las cargas que pesan sobre el padre alimentista.[5]

En vista de lo anterior, se modifica la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al foro primario para que evalúe, según lo aquí resuelto, si se debe modificar la pensión que en concepto de alimentos le fuera fijada al padre no custodio, en atención a que a la luz de los hechos de este caso procede la atribución de la vivienda familiar a la menor representada por la madre custodia. Así modificada se confirma la determinación del foro apelativo intermedio.

Se dictará sentencia de conformidad.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

---

[5] Véase, Cervilla Garzón, *op. cit.*, págs. 161-170.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Santos A. Candelario Vargas

    Peticionario

        v.                       CC-2006-214

Madeline Muñiz Díaz

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 7 de junio de 2007

Por los fundamentos antes expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, dictamos sentencia modificando la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al foro primario para que evalúe, según lo aquí resuelto, si se debe modificar la pensión que en concepto de alimentos le fuera fijada al padre no custodio, en atención a que a la luz de los hechos de este caso procede la atribución de la vivienda familiar a la menor representada por la madre custodia. Así modificada se confirma la determinación del foro apelativo intermedio.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo